### IN THE COURT OF COMMON PLEAS OF
### LUCAS COUNTY, OHIO

STATE OF OHIO,            )          EXHIBIT 19
                          )
        PLAINTIFF,        ) CASE NO. CR06-3339
                          )
v.                        )
                          ) JUDGE BARBER
ROBERT WILSON             ) BY ASSIGNMENT
                          )
        DEFENDANT.        )

                    -   -   -

        BE IT REMEMBERED, that in the sentencing

proceedings of the aforementioned cause on

October 10, 2008, before the Honorable James E.

Barber, in the Lucas County Court of Common

Pleas, the following excerpt proceedings were

held, to-wit:

APPEARANCES:

On behalf of the Plaintiff:
Assistant Lucas County Prosecutor,
Michael Loisel, Esquire

                    -   -   -

On behalf of the Defendant, Robert Wilson:
Ronnie L. Wingate, Esquire
Neil S. McElroy, Esquire

                    -   -   -

 Stacey L. McDevitt, RPR, Official Court Reporter
      Lucas County Common Pleas Courthouse,
      700 Adams Street, Toledo, Ohio 43624
                (419) 213-4477
                    -   -   -

1                          I N D E X

2
        (NO EXHIBITS MARKED OR IDENTIFIED.)
3

4       (NO EXAMINATION OF WITNESSES.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1       OCTOBER 10, 2008

2       COURTROOM #3

3       9:17 A.M.

4       (WHEREUPON THE FOLLOWING DISCUSSION WAS

5    HELD IN CHAMBERS.)

6       THE COURT:    All right.  Let the record

7    reflect that we are here in Case Number

8    2006-3339, State of Ohio versus Robert Wilson.

9    We are in chambers just about to proceed to

10   sentencing, however, there are several matters

11   that have been filed and need to be addressed

12   before we can go to sentencing.

13       I note that on September 19, the

14   Defendant did file a motion for acquittal.  I

15   don't see -- do you have a motion for a new

16   trial?

17       MR. MCELROY:    The motion for new trial

18   is not there.  There is a renewed motion to

19   dismiss the indictment, however.

20       THE COURT:    Okay.  When was that done?

21       MR. MCELROY:    That was filed yesterday.

22       THE COURT:    I haven't caught up with

23   the file yet.  Do you have a copy of that?

1          MR. WINGATE:    What did I give him?

2          THE COURT:     Renewed motion to dismiss.

3     That's the only motion then pending since the

4     verdict?

5          MR. WINGATE:    These two you mean?

6          MR. MCELROY:    Those two motions, Judge.

7          THE COURT:     The renewed motion and

8     what's the second one?

9          MR. MCELROY:   The 29(c).

10         THE COURT:     The 29(c) motion, which

11    was filed September 19th.  Those are the two

12    motions pending?

13         MR. WINGATE:   Right, Your Honor.  We

14    would like the Court to allow us to make an oral

15    motion for a new trial with argument, and I've

16    just been informed that it may be 120 days to

17    file the motion for new trial, or is the Court

18    under a different impression?

19         THE COURT:     I thought it had to be

20    before the sentencing.

21         MR. WINGATE:   All right.  We'll make an

22    oral motion then this morning.

23         THE COURT:     Let's take them in order

1     here. Well, first of all, should indicate that

2     Defendant is present in court. We're in chambers

3     with his attorneys, Mr. Wingate and McElroy.

4     State is represented by Assistant

5     Prosecutor Loisel. And let's go ahead and take

6     these in order.

7         On the September 19th there was a motion

8     to acquit. Do you want to embellish or enlarge

9     that argument at all?

10        MR. MCELROY: Judge, the 29(c) motion,

11    unlike the Criminal Rule 29 motion that was made

12    during the trial, is not based on merely whether

13    or not the State put on enough evidence, but

14    whether there was sufficient evidence to overcome

15    the presumption of innocence and find the

16    Defendant guilty beyond a reasonable doubt. The

17    Court sat through the trial obviously, as well as

18    those present here today, and there are really --

19    there was one witness that linked Mr. Wilson to

20    Brenda Navarre's murder and that witness was

21    uncertain at where he had received information

22    regarding the murder, whether it was from his

23    mother or from Mr. Wilson.

1          Additionally, I think we'll cover this in

2     the motion for new trial, some of his statements

3     have been called into doubt since the trial with

4     more information that we have, and, moreover, the

5     concern of the Defendant is that the testimony

6     offered by Mrs. Wilson really did not prove that

7     Mr. Wilson did anything, and certainly didn't

8     prove that he did anything beyond a reasonable

9     doubt.  And the concern is that the only way that

10    the jury was able to convict Mr. Wilson was by

11    making assumptions about what could have been

12    testified to by Mrs. Wilson.  A part of that is

13    evidence by the question from Mr. Montague on the

14    second day of trial, expressing his understanding

15    that a wife cannot testify against a husband, but

16    why didn't the Prosecutor ask certain questions

17    of certain witnesses.

18          So, with those two factors, we would ask

19    that the Court grant Mr. Wilson's motion for

20    acquittal in accordance with Criminal Rule 29(c).

21          THE COURT:    Mr. Loisel.

22          MR. LOISEL:    Judge, the State did not

23    prepare a written response, however, with respect

1    to a 29(c) motion, the Court has to view the

2    evidence in the light most favorable to the

3    Prosecution.  The Court is to determine whether

4    the State of Ohio presented sufficient evidence

5    to each essential element charged in the offense.

6           In this case, as Counsel indicated, this

7    Court had an opportunity to hear the evidence.

8    The State of Ohio clearly submitted sufficient

9    evidence to show that on or about December 1st

10   through December 3rd of 1993 that Robert Wilson

11   purposely caused the death of Brenda Navarre.

12   You heard the testimony from Janet Wilson,

13   Alfonzo Davis, Detective Vasquez,

14   Detective Beavers, Detective Seymour, and others,

15   and they all point to the Defendant.  Their

16   testimony all points to this Defendant as the

17   perpetrator of this crime.

18           Obviously there's circumstantial evidence

19   as well as direct evidence.  A jury can infer

20   certain facts from the evidence.  The direct

21   evidence pointing to this Defendant is the

22   conversation that he had with Alfonzo Davis.

23   Counsel wants this Court to believe that maybe

1    he's confused as to where he heard this

2    information from, whether it was from the

3    Defendant or his mother; however, if the Court

4    remembers, there were three distinct parts of

5    that statement, and only one part of that

6    statement may or may not have come from

7    Janet Wilson, if the Court remembers,

8    Alfonzo Davis testified that the Defendant told

9    him that he had to do what he had to do, that he

10   had to kill the snitch bitch.  Those two are

11   unequivocally pointed to the Defendant.  The

12   Defense Counsel wants to claim that the third

13   part or third aspect of the statement that he

14   dropped a rock on her head could be attributable

15   to Janet Wilson.  Well, it could be, but he

16   indicated initially that it was the Defendant who

17   told him.  So, reasonable minds could differ as

18   to who told him the third part, but there was no

19   question as to who told him the first two aspects

20   of that statement.

21        Ultimately the State argues, and I think

22   it is clear that the jury did not lose its way to

23   create a manifest miscarriage of justice.  The

1      State would argue that it would be a manifest

2      miscarriage if this Court were to grant this

3      motion.  So, with that in mind, we ask that this

4      Court deny Counsels 29(c) motion at this point.

5            THE COURT:    Any rebuttal?

6            MR. MCELROY:    Judge, Mr. Loisel talks a

7      lot about inferences and I think that's the major

8      concern raised by the motion is that the jury was

9      not permitted to infer what her testimony may

10     have been.  Much of the testimony of the

11     detectives merely stated that after talking to

12     Janet Wilson, we pursued Robert Wilson.  Yet

13     again, the jury is asked to make more inferences,

14     well, okay, well, what was said to the detectives

15     at that time that made them pursue Robert Wilson.

16     The only evidence the jury was permitted to

17     consider was the testimony brought before the

18     Court, and despite the fact that there was an

19     indictment, and despite the fact that they

20     investigated Mr. Wilson, the testimony offered in

21     this courtroom was insufficient to prove

22     Mr. Wilson's guilt beyond a reasonable doubt, and

23     that's the juncture the Court is at now and the

1    Court is forced to determine.  And, frankly, the

2    Court has to consider the credibility of the

3    witnesses, as we are asking the Court to step

4    into the role of trier of fact at this point to

5    determine whether or not there was a sufficient

6    amount of evidence, and, again, I feel like I'm

7    saying it over and over again, but to prove his

8    guilt beyond a reasonable doubt.  And it is

9    Mr. Wilson's position that the jury undertook a

10   dangerous -- their undertaking making inferences

11   regarding what her -- Mrs. Wilson's testimony may

12   have been was impermissible and without making

13   those inferences, they were unable to reach a

14   verdict of guilty in this case.

15           MR. LOISEL:    If I may though, for the

16   record, you must also consider what Janet Wilson

17   was allowed to testify to and that of all nights

18   that night she was allowed to testify that, in

19   fact, she, in fact, she did pick up Robert

20   Wilson; that he had two bags with him; and that

21   of all nights they stayed the night at Alfonzo

22   Davis's that night, the one time that they ever

23   did.

1          So, the State does not talk -- strike

2     that.

3          An inference can be made with respect to

4     what happened that night due to the fact that she

5     had to go pick up Robert Wilson, just so happened

6     that it was the night that Brenda Navarre was

7     murdered.

8          So, along those lines, this Court has to

9     consider that as well, along with what I already

10    spoke about Alfonzo Davis, Detective Seymour, and

11    the motive, and among other things.  So, we would

12    leave it at that, Judge.

13          THE COURT:    Well, the Court has great

14    respect for the jury system and the opinions of

15    the jurors in this case.  The Court is going to

16    decline the suggestion that I should take over a

17    job as trier of fact.  So, I'm going to find that

18    there is no manifest miscarriage of justice at

19    this point in relationship to the presumption of

20    that goes with the verdict.  I'm going to

21    overrule the Defendant's motion at this time.

22    The exception is noted.  I'm sure this matter

23    will be fully briefed and argued in the Court of

1    Appeals.

2          Next we have the motion -- oral motion

3    for a new trial.  Do you want to argue that at

4    this time?

5          MR. WINGATE:   Yes, Your Honor.  I will

6    indicate for the record that the oral motion for

7    new trial is based upon fully discovered evidence

8    and this, too, shows the interrelatedness of the

9    motion that's been filed on behalf of Mr. Wilson,

10   that being that the State is indicating, and not

11   withstanding the testimony of Mrs. Janet Wilson

12   that the State believes that there was sufficient

13   evidence or credibility to that of Alfonzo

14   Fonseca to establish the guilt beyond a

15   reasonable doubt of Mr. Wilson.  However, if I'm

16   not mistaken, it was during the testimony of

17   Mr. Fonseca that he indicated he was unsure,

18   one -- I'm sorry -- Mr. Alfonzo Davis that he did

19   not know the source of the information that had

20   been provided to him, meaning it could have come

21   from his mother or it could have come from

22   Robert.  But more specifically he clearly

23   indicated when pressed by the State of Ohio that

1    he received this information in 1995 while riding

2    around in a motor vehicle with Mr. Wilson.

3         We have subsequently obtained information

4    which clearly shows that Mr. Wilson was

5    incarcerated in a penal institution in 1995.

6    Now, the significance of this is that it goes

7    directly to the credibility and believability of

8    Mr. Davis.  As such, if there is some question as

9    to the believability and his credibility, then it

10   could more than likely impact upon this jury's

11   verdict or the outcome that was the resulting

12   outcome in this case.

13        So, based upon that we believe that the

14   information that we now have could not have been

15   discovered prior to trial.  I will indicate to

16   the Court that I had an opportunity to speak with

17   Mr. Davis, and at that time the only recitation

18   that he gave me was that he was high, he was

19   under the influence of marijuana, he did not know

20   whether -- when he said this he said that he

21   didn't remember anything and that he was biased

22   towards Mr. Wilson, but at no time did he give a

23   specific date, year, month, whenever, as it

1    relates to when this statement was purportedly

2    made by Mr. Wilson.

3         It was only after being pressed on the

4    witness stand by the State of Ohio that the date

5    or the year of 1995 was elicited, and it was

6    subsequent to that time that we were able to find

7    out that Mr. Wilson was, in fact, incarcerated.

8    I believe that this could have impacted or would

9    have impacted the outcome of this case and we

10   believe the Court should now allow a new trial to

11   be had on behalf of Mr. Wilson.

12        THE COURT:    Mr. Loisel.

13        MR. LOISEL:    Judge, with respect to the

14   information that Mr. Davis presented at trial, I

15   don't have transcript in front of me, but I

16   believe that his testimony was that he does not

17   recall exactly when that statement was made, and

18   Mr. Wingate says, well, it was in 1994, 1995, he

19   said he thought it was 1995 but he wasn't for

20   sure.  Any information that Mr. Wingate has

21   garnered from Mr. Davis subsequent is, in fact,

22   irrelevant at this point.

23        He testified to that Mr. Wingate had the

1    information available to him during trial to ask

2    him about when this took place, and I believe he

3    did and tried to pin him down.  And if the Court

4    remembers, Mr. Davis said that he wasn't sure

5    when this conversation took place but that it, in

6    fact, did take place.  So, I don't believe that

7    there's any merit to this request and we would

8    ask that the Court deny it.

9         MR. WINGATE:    Your Honor, the

10   significance of this is that it was not the

11   Defense that elicited a specific time frame.  It

12   was the State of Ohio in its zeal to present its

13   case specifically asked of Mr. Davis, did this

14   occur in 1995.  We have a rough draft of the

15   transcript of this matter, and there were several

16   references to the year 1995 by the State of Ohio,

17   to which Mr. Davis acquiesced and agreed that it

18   occurred in 1995.  That is the only date that we

19   have.  Whether or not I asked was it '93, '94,

20   the fact of the matter is the State elicited from

21   him the date of 1995, which we did not have, had

22   no idea as to when it occurred and had no idea

23   until he testified and the State elicited this

1   time frame from him.

2          THE COURT:    Well, I'm going to be

3   honest, there's no question that the testimony of

4   Mr. Davis was instrumental in this case, and

5   whether that statement was made in 1995 or some

6   other time, I can't recall all of the testimony

7   with respect to that matter, but I'm sure

8   eventually we're going to have a disposition by

9   the three wise men on this issue at a later time.

10         At this point I'm going to overrule your

11  motion and move on to number three.

12         MR. WINGATE:    All right.

13         THE COURT:    Which is the motion to

14  dismiss the indictment.

15         MR. WINGATE:    Yes, Your Honor.  At this

16  juncture we would ask the Court that when this

17  motion was initially filed by the Court, the

18  Court ordered a transcript of the grand jury, and

19  I believe one was actually provided to the Court.

20  The Court had an opportunity to review that

21  transcript and at that time or at the ruling on

22  the motion, the Court indicated that it would

23  deny our motion for one, a transcript, Defense

1    Counsel be provided a copy of the transcript,

2    and, two, the motion to dismiss.  Again, I'm only

3    speculating, but it is my understanding that at

4    best, it was Janet Wilson, the wife of the

5    Defendant who testified before the grand jury and

6    the resulting indictment occurred in this case.

7         Now, with that in mind, the Court is

8    aware that the issue presented in this case, one

9    of the chief issues was whether or not spousal

10   privilege applied.  The two aspects of it being,

11   one, the competency of Mrs. Wilson to testify,

12   which she elected to testify and made herself

13   competent.

14        The second aspect of it is whether or not

15   Mr. Wilson would exert his spousal privilege

16   relative to acts, communications, and conduct

17   that occurred in the presence of Mrs. Wilson.

18        At the time of trial, Mr. Wilson did

19   exert his spousal privilege, which the Court

20   found well taken, and if I'm not mistaken, the

21   Court in quoting the Court said, "Well, I'll be

22   honest with you, ever since law school, which was

23   back in the middle ages I guess, I always

1    understood that privilege whether it is between

2    penitent husband and wife or whatever dealt with

3    the relationship rather than the conduct.  And

4    although I may not be happy about it, I believe

5    that privilege does attach and is applicable in

6    the present case here, so I'm going to allow some

7    questioning of this witness at this time.

8          There is an exception, which is

9    recognized about statements that were made or

10   conduct that occurred in the presence of third

11   parties.  You will be allowed to question this

12   witness to establish a basis for third party

13   presence, and the witness will be instructed and

14   hereby is instructed that any testimony she gives

15   with respect to statements made by the Defendant

16   or conduct that she observed by the Defendant

17   must have occurred in the presence of a third

18   party before she will be allowed to testify as to

19   those matters."

20         If the Court will recall, the ruling by

21   the Court that spousal privilege applied resulted

22   in minimal testimony by Mrs. Wilson.  The

23   significance of this is at the time that she

1    testified in front of the grand jury, the

2    Prosecutor had unfettered control as to what she

3    said, how she said it, and the extent of it,

4    whether it covered communications, whether it

5    covered acts, whether it covered conduct, all of

6    that was presented.  But in this trial, this

7    Court found that the spousal privilege of

8    Mr. Wilson did apply and did not allow this

9    testimony to come in.

10          The reason that we're saying that now

11    that if the Court has decided that it was

12    applicable, the spousal privilege at this point

13    in trial, then it was also applicable at the time

14    she testified in front of the grand jury.  And

15    with that, Your Honor, any resulting indictment

16    would be void ab initio.  The fact of the matter

17    is we may have proceeded to trial, the jury may

18    have rendered a verdict, but if that verdict, if

19    that trial is premised upon an indictment that is

20    in fact void ab initio, then the Court, Your

21    Honor, has responsibility to correct that

22    manifest injustice.

23          So, at this juncture based upon the

1      Court's ruling in this case that spousal

2      privilege does apply or did apply does apply and

3      would have applied in the grand jury testimony.

4           If I'm not mistaken, the motion that we

5      presented says in siting State v. Baker and in

6      that case, the Court said, and the citation for

7      that is 137 Ohio Appellate 3d 628, 2000 the Court

8      began in its analysis by defining the scope of

9      the spousal privilege.  The Court noted that A

10     spouse cannot testify regarding communication

11     made by one to the other, or an act done by

12     either in the presence of the other during

13     coverture.  That's the significant thing.  It

14     goes on to say, The grand jury may consider

15     incompetent evidence" which would be -- which

16     would be Janet Wilson testifying, but declaring

17     herself to be competent by waiving her right to

18     refuse, but the Baker case goes on to say that

19     The grand jury may consider incompetent evidence

20     but it may not itself violate a valid privilege.

21     The spousal privilege is established by statute

22     and that has, in fact, been violated and for that

23     reason we believe that the Court should, one,

1    find that the indictment was void ab initio and

2    therefore discharge Mr. Wilson at best; two, if

3    the Court will allow us to supplement our claim

4    that inasmuch as we were denied access to the

5    grand jury testimony previously because, one, as

6    the Court is aware, secrecy, the fact of the

7    matter that all of the criteria that establishes

8    the secrecy of the grand jury applied at that

9    point, but in this particular case, we have an

10   indictment, we've had a trial, there's been a

11   subsequent conviction.  There is no reason why

12   Defense cannot have an access to a copy of the

13   grand jury testimony.

14        The requirement for the Defense to show

15   in order to have access or to inquire or acquire

16   a copy of the grand jury testimony is that we

17   must show a particularized need.

18        Now, we've established that the reason

19   for denial of the Defense having a copy of that

20   grand jury testimony, all of those reasons are

21   now moot, secrecy, protecting witnesses, ongoing

22   investigation, all of those are inapplicable at

23   this point.  Now we're telling the Court that we

1    have a particularized need because we believe

2    that the indictment in this case is void ab

3    initio, and in order to establish that, we need

4    the copy -- a copy of the grand jury testimony in

5    order to establish that.

6         For all of those reasons, we would

7    respectfully ask this Court, one, to make a

8    finding that the indictment was void ab initio,

9    and, second, provide the Defendant with a copy of

10   the grand jury testimony.

11        THE COURT:     Mr. Loisel.

12        MR. LOISEL:     Judge, this is quite

13   honestly just a rehash of what this Court has

14   already ruled on with respect to the request for

15   the grand jury transcript.  The State provided

16   the transcript to this Court.  This Court had an

17   opportunity to read that transcript and made a

18   ruling with respect to divulging that transcript

19   to Defense Counsel.  There was no particularized

20   need for the transcript to be presented to

21   Defense Counsel.  Quite honestly the case law

22   says that as long as an indictment is brought, it

23   cannot solely be brought on information that is

1    privileged.

2         This Court had an opportunity to look at

3    the transcript, and the indictment was not

4    brought solely on privileged information.  The

5    Court made a ruling indicating as such and

6    therefore the State would stand on its original

7    response indicating that there is no problem with

8    the indictment and it should not be dismissed.

9         The Court has already ruled in the

10   State's favor on that motion and simply because

11   Janet Wilson was ordered not to testify to

12   certain things during the trial makes no

13   difference, doesn't change what she said at grand

14   jury.

15        The Court had an opportunity to look at

16   that transcript to determine what could or could

17   not or might possibly be privileged and it was

18   clear to the Court then, and it hadn't changed,

19   that the indictment was not based solely on

20   privileged information.

21        So, we're arguing a motion that has

22   already been ruled on, facts and circumstances

23   have not changed.  Mr. Wingate wants to argue

1     that because she, in fact, did assert her

2     privilege during trial and was not allowed to

3     testify to various things, that that somehow

4     changes how this Court would look at the

5     indictment and the grand jury testimony.  It

6     changes nothing.  She testified to what she

7     testified to at grand jury along with others, and

8     a grand jury brought back an indictment.

9     The simple fact that she testified at

10     trial means nothing to this.  It is just, as I

11     said, an attempt to resurrect a motion that's

12     already been ruled upon with the applicable case

13     law that's already been cited by the State of

14     Ohio with respect to what is available for grand

15     jury testimony.  And we would ask the Court deny

16     this motion, and the State doesn't have a copy of

17     this motion today, but, again, I think it is just

18     a resurrection of the old motion.

19     THE COURT:    Refresh my -- does

20     Evidence Rule 101 apply to grand jury testimony,

21     the exceptions or certain hearings that are

22     accepted from evidence rule under 101?  Is grand

23     jury proceedings one of those accepted hearings?

1          MR. WINGATE:    You mean as it relates

2     to --

3          THE COURT:    I mean --

4          MR. WINGATE:    -- the use of privilege or

5     non-privilege?

6          THE COURT:    Where is my evidence book?

7          MR. LOISEL:    Judge, privilege is

8     allowed to be testified to as well as hearsay

9     during grand jury.

10          THE COURT:    It's Evidence Rule 101,

11     and there are certain exceptions where the

12     evidence rules do not apply and, I can't remember

13     whether grand jury proceedings are within that.

14     Do you recall?  Where is the evidence rule?

15          MS. MERCER:    Allison is getting you the

16     book.

17          MR. LOISEL:    I believe if the Court

18     has the State's response from the initial motion

19     to dismiss indictment, it is laid out in that

20     response as well, Judge, with respect to the case

21     law that what is allowable at grand jury.  And as

22     I said, the privilege testimony is allowable.

23     The indictment simply can't be based solely on

1    privileged information, and it was determined

2    that it was not in this case, and, therefore, the

3    motion should be denied as it was earlier.

4         MR. WINGATE:    Your Honor, that

5    recitation flies in the face of Baker because

6    what Baker says is that the grand jury may

7    consider incompetent evidence but it may not

8    itself violate a valid privilege.  That privilege

9    that we're talking about is the spousal

10   privilege, which is inherent to Mr. Robert

11   Wilson.  Mr. Robert Wilson was not at the Grand

12   Jury, nor was his Counsel to exert his -- or

13   assert his privilege, spousal privilege at that

14   time.

15        The State seems to want to believe that,

16   well, yes, she's testified and nothing has

17   changed, which even -- I'm sorry.

18        THE COURT:    All right.  I'm looking at

19   Rule 101.4 grand jury proceedings, the Ohio Rules

20   of Evidence do not apply to proceedings before

21   grand juries other than with respect to

22   privileges.

23        MR. LOISEL:    Judge that's correct.

1          THE COURT:      The privileges that apply

2     to statements between spouses does not apply to

3     the statements that are made in the presence of a

4     third party or third person.

5          MR. WINGATE:      And, Your Honor, that's

6     exactly what we're saying.  We're saying that

7     this Court, after hearing the arguments relative

8     to whether or not Mrs. Wilson Could testify and

9     with Mr. Robert Wilson exerting -- or asserting

10    his spousal privilege right, this Court declared

11    that she could not testify.

12          I mean, the extent was that the Court

13    said specifically, that I may not be happy about

14    it, I believe that privilege does attach and is

15    applicable in the present case.

16          This is what the Court stated.  This is

17    what the Court found and if, in fact, it applied

18    at this trial, then it also would apply back to

19    that proceeding before the grand jury.

20          MR. LOISEL:      That's incorrect, Judge.

21    Mr. Wingate can read what the Court said over and

22    over again.  The case law states it is not what

23    the Prosecutor suggests.  The case law is clear

1          that it says the grand jury can consider

2          privileged information although it cannot base

3          its indictment on privileged information.  I

4          don't have a copy of this motion.  I can go get

5          my response and read to you verbatim what this

6          case law says if the Court desires.

7               THE COURT:     I'm looking at rule 101.4

8          as well here.  It states privileged material is

9          exempt from disclosure of grand jurors under

10         Evidence Rule 101(B).  What does that mean?

11              MR. LOISEL:     Judge, I can get my

12         motion.  Mr. Wingate suggests that he should be

13         allowed to go to grand jury.

14              THE COURT:     That seems to indicate

15         that privileged materials can be disclosed,

16         that's the way I read that.

17              MR. LOISEL:     And that's the way the

18         case law states that it can be.  It just solely

19         cannot be based on privileged information, and as

20         the transcript suggests, other individuals

21         testified at grand jury and an indictment was

22         brought.

23              THE COURT:     And as I remember, there

1       were a number of investigators who testified or
2       several investigators who testified in the grand
3       jury, so there was some hearsay testimony
4       presented to the grand jury, but under 101, I
5       don't think hearsay is excluded.
6              MR. LOISEL:     That's correct.
7              MR. WINGATE:    That hearsay is based upon
8       what the spousal privilege -- there's still a
9       problem.
10             MR. LOISEL:     No, there isn't.  You
11      don't know that the hearsay based upon what
12      Janet Wilson said.  I'm not going to divulge what
13      was said at grand jury because you're not allowed
14      to see that.  The Court has that under seal.
15             THE COURT:     We have that under seal
16      and the higher court is going to certainly have
17      an opportunity to review it.
18             How much time -- what kind of a tail is
19      your client looking at right now?  He's currently
20      incarcerated, right?  When is his out date?
21             MR. WILSON:     13.
22             MR. WINGATE:    2013.
23             THE COURT:     So he's got a couple years

1      anyways.  All right.  So we've got plenty of time

2      to sort through all this.

3              I'm going to overrule your motion at this

4      point.  Are we ready to go?

5              MR. LOISEL:      Yes, Judge.

6              MR. MCELROY:      Will the grand jury be

7      available for appellate Counsel?

8              THE COURT:      Absolutely.

9              MR. LOISEL:      Well, Judge, it is under

10     seal at this point.

11             THE COURT:      Let me back off on that.

12     The appellate counsel can apply to the Court of

13     Appeals for a release, and I'm not going to speak

14     for the Court of Appeals.  All right?

15             (WHEREUPON THE PRECEDING DISCUSSION HELD

16     IN CHAMBERS CONCLUDED AND THE FOLLOWING

17     PROCEEDINGS WERE HELD IN OPEN COURT.)

18             THE COURT:      Let the record reflect

19     that we are here in case number CR2006-3339,

20     State of Ohio versus Robert Wilson.  We are here

21     today for sentencing.  The Defendant is present

22     in court with his attorneys, Mr. Wingate and

23     Mr. McElroy.  State is here represented by

1     Assistant Prosecutor Loisel.  This matter comes

2     on for sentencing pursuant to a verdict of guilty

3     rendered on September 5 of 2008 of the charge of

4     murder in violation of Revised Code Section

5     2903.02(A) and 2929.02.

6           Mr. Wilson, I would ask you at this time

7     if there's any reason why sentence should not be

8     presented against you.

9           MR. WILSON:    No.

10          THE COURT:    This will be your

11    opportunity to make any statements that you wish

12    to make to the Court in mitigation, however, the

13    Court is aware that there are -- there is a high

14    degree of probability that this matter may

15    proceed in the Court of Appeals and you may --

16    any statement that you make may have some impact

17    on the appellate process.  After discussing this

18    matter with your attorneys, you should and are at

19    this time given an opportunity to make any

20    statements you wish to make.

21          MR. WILSON:    Well, the only thing I can

22    say is how the Court has already made its

23    decision and what it desires to do, you've shown

1    your discontent for what you didn't rule in my

2    favor, so I doubt anything I say at this point

3    would change it even though, you know --

4         THE COURT:    You're unhappy.

5         MR. WILSON:    Not only I'm unhappy, I

6    don't believe according to the Court white man's

7    justice and black man's grief, and we can go on

8    with it.

9         THE COURT:    Anything you wish to say,

10   Mr. Wingate, on behalf of Mr. Wilson?

11        MR. WINGATE:    The statute basically ties

12   the hands of the Court as far as any imposition

13   of sentence, and based upon that, there's only

14   one sentence the Court can impose, and,

15   therefore, we have nothing to say.

16        THE COURT:    All right.  Mr. Loisel,

17   are there any witness who is wish to speak or any

18   members of the public that wish to speak before

19   you speak?

20        MR. LOISEL:    Judge, a number of family

21   members of the victim are present, and they have

22   previously presented statements to Court, I

23   believe one as late as this morning, and I wanted

1      to make sure that the Court --

2              THE COURT:     I have had an opportunity

3      to review those, and I should further indicate

4      that I reviewed the letter that the Defendant

5      sent me as well.

6              MR. LOISEL:     The only thing the State

7      would ask at this point, Judge:  The Defendant is

8      currently incarcerated on a separate offense

9      until 2013.  The State would ask that sentence

10     given in this case be consecutive to his current

11     incarceration and should not be rewarded

12     concurrent time due to the fact that it took 15

13     years to get this case to a jury trial, and so we

14     would just ask that the sentence that the Court

15     is obligated to go forward with today be ordered

16     consecutive to his current incarceration.

17             THE COURT:     All right.

18             MR. WINGATE:     We would object to that.

19             THE COURT:     Objection is noted.

20             Well, this case has been long, and

21     frankly a number of legal thickets and

22     entanglements have been part of this process.

23     This has probably been one of the most complex

1    cases this Court has ever had to preside or be

2    involved in, due to the fact that there are

3    significant legal issues that I'm sure will be

4    going up to a higher Court.  I'm going to decline

5    to make any further statement at this time.  I'm

6    just going to impose sentence.

7         On this day, the Defendant's sentencing

8    hearing is being held pursuant to Revised Code

9    Section 2929.19.  Court Reporter McDevitt is

10   present in court, as is Defendant with his

11   Counsel, Mr. Wingate and Mr. McElroy and the

12   State is here represented by Assistant

13   Prosecutor Loisel.  The Defendant has been

14   afforded all rights pursuant to Criminal Rule 32.

15   Court considered the record and oral statements.

16   The Court further does note that there were two

17   presentence reports prepared in this case.  One

18   which was prepared back in 2001, and the one most

19   recently appeared just prior to this matter

20   coming on for sentencing.  The Court has

21   considered the matters that have been related in

22   both of those reports, as well as the letters of

23   victim impact the Court has received.

1           The Court has considered the principles

2      and purposes of sentencing, as the Court is

3      required to do, in Revised Code Section 2929.11.

4      And the Court has balanced the seriousness and

5      recidivism factors, as the Court is required to

6      do, under section 2929.12.

7           The Court finds that the Defendant has

8      been convicted of the offense of murder in

9      violation of Revised Code Sections 2903.02(A) and

10     2929.02 of the Ohio Revised Code, pre-1996 law.

11          Court makes further finding that

12     Defendant is not amenable and is not eligible for

13     community control.  The Court makes further

14     finding that prison is consistent with purposes

15     of section 2929.11.

16          Court makes further finding that

17     Defendant has a significant history that has been

18     revealed in the PSIs in this case, and, as I

19     said, have been revealed during the course of the

20     proceedings in this case.  The Defendant has

21     further performed the worst case of offense;

22     therefore, it is the sentence of this Court that

23     the Defendant is sentenced a term of 15 years to

1    life.  That will be served consecutive to the

2    sentence he is currently serving for which he has

3    an out date of -- that would be case number

4    CR99--2921.  Thank you.

5         The Defendant is not eligible for PRC

6    because that would be post Senate Bill 2,

7    however, Defendant will be eligible for parole

8    after the 15 years is served consecutive, and

9    should advise the Defendant that if, in fact,

10   parole is granted, he will be subject to the

11   parole board for the balance of his life.

12        The Defendant has been given all of his

13   rights to notice under Revised Code Section

14   2929.19(B)(3), and of his appellate rights under

15   2953.08.

16        At this time the Defendant will be

17   ordered conveyed back into the custody of the

18   Ohio Department of Rehabilitation and

19   Corrections.  You will be given credit for all

20   days served and all future custody days while

21   awaiting transportation to the appropriate state

22   institution.  The Defendant is ordered to pay any

23   restitution and prosecution costs, court

1    appointed counsel fees, and any fees permitted

2    under 2929.18(A)(4).

3         You do have the right to appeal this

4    sentence to a higher Court, Mr. Wilson.  Any

5    appeal needs to be exercised within 30 days of

6    the filing of the judgment entry sentence in this

7    matter.  Do you understand?

8         MR. WINGATE:   Your Honor, he does wish

9    to appeal and ask the Court at this point to

10   appoint Spiros Cocoves to represent him in this

11   matter.

12        THE COURT:    I was going to advise if

13   he could not afford to pay for the services of an

14   appellate counsel, the Court would appoint

15   appellate counsel at State's cost.  Mr. Cocoves

16   is fine.  I have no problems with him.  Is there

17   any objection to appointing him to this case?

18        MR. LOISEL:   Judge, I would just leave

19   it up to the discretion of the Court.

20        THE COURT:    If that's what he wants,

21   that's fine with me.  Anything else at this time?

22        MR. WINGATE:   Nothing further.

23        THE COURT:    At this time the Defendant

1     will be remanded to the sheriff for execution of

2     sentence.  We are in recess.

3              (WHEREUPON COURT ADJOURNED FOR THE DAY ON

4     OCTOBER 10, 2008, AT 10:04.)

5                   -   -   -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

2

3                    **C E R T I F I C A T E**

4

5

6

7                    I, THE UNDERSIGNED, HEREBY CERTIFY

8    THAT THE ABOVE AND FOREGOING IS A TRUE AND

9    COMPLETE TRANSCRIPT OF THE PROCEEDINGS HAD IN THE

10   SENTENCING HEARING OF THE ABOVE-ENTITLED CAUSE.

11

12

13

14

15

16                              _____

17                              Stacey L. McDevitt, RPR

18                                    Official Court

19        Reporter

20

21

22

23

**'** 

**'93** [1] - 15:19
**'94** [1] - 15:19

## 1

**10** [3] - 1:10, 3:1, 38:4
**101** [4] - 24:20, 24:22, 25:10, 29:4
**101(B)** [1] - 28:10
**101.4** [2] - 26:19, 28:7
**10:04** [1] - 38:4
**120** [1] - 4:16
**13** [1] - 29:21
**137** [1] - 20:7
**15** [3] - 33:12, 35:23, 36:8
**19** [1] - 3:13
**1993** [1] - 7:10
**1994** [1] - 14:18
**1995** [10] - 13:1, 13:5, 14:5, 14:18, 14:19, 15:14, 15:16, 15:18, 15:21, 16:5
**19th** [2] - 4:11, 5:7
**1st** [1] - 7:9

## 2

**2** [1] - 36:6
**2000** [1] - 20:7
**2001** [1] - 34:18
**2006-3339** [1] - 3:8
**2008** [4] - 1:10, 3:1, 31:3, 38:4
**2013** [1] - 29:22, 33:9
**213-4477** [1] - 1:22
**29** [1] - 5:11
**29(c** [4] - 4:10, 5:10, 7:1, 9:4
**29(c)** [2] - 4:9, 6:20
**2903.02(A** [2] - 31:5, 35:9
**2921** [1] - 36:4
**2929.02** [2] - 31:5, 35:10
**2929.11** [2] - 35:3, 35:15
**2929.12** [1] - 35:6
**2929.18(A)(4)** [1] - 37:2
**2929.19** [1] - 34:9
**2929.19(B)(3** [1] - 36:14
**2953.08** [1] - 36:15

## 3

**3** [1] - 3:2
**30** [1] - 37:5

**32** [1] - 34:14
**3d** [1] - 20:7
**3rd** [1] - 7:10

## 4

**419** [1] - 1:22
**43624** [1] - 1:22

## 5

**5** [1] - 31:3

## 6

**628** [1] - 20:7

## 7

**700** [1] - 1:22

## 9

**9:17** [1] - 3:3

## A

**A.M** [1] - 3:3
**ab** [5] - 19:16, 19:20, 21:1, 22:2, 22:8
**able** [2] - 6:10, 14:6
**ABOVE** [2] - 39:8, 39:10
**ABOVE-ENTITLED** [1] - 39:10
**Absolutely** [1] - 30:8
**accepted** [2] - 24:22, 24:23
**access** [3] - 21:4, 21:12, 21:15
**accordance** [1] - 6:20
**according** [1] - 32:6
**acquiesced** [1] - 15:17
**acquire** [1] - 21:15
**acquit** [1] - 5:8
**acquittal** [2] - 3:14, 6:20
**act** [1] - 20:11
**acts** [2] - 17:16, 19:5
**Adams** [1] - 1:22
**Additionally** [1] - 6:1
**addressed** [1] - 3:11
**ADJOURNED** [1] - 38:3
**advise** [2] - 36:9, 37:12
**afford** [1] - 37:13
**afforded** [1] - 34:14
**aforementioned** [1] - 1:9
**ages** [1] - 17:23

**agreed** [1] - 15:17
**ahead** [1] - 5:5
**Alfonzo** [7] - 7:13, 7:22, 8:8, 10:21, 11:10, 12:13, 12:18
**Allison** [1] - 25:15
**allow** [5] - 4:14, 14:10, 18:6, 19:8, 21:3
**allowable** [2] - 25:21, 25:22
**allowed** [6] - 10:17, 10:18, 18:11, 18:18, 24:2, 25:8, 28:13, 29:13
**amenable** [1] - 35:12
**amount** [1] - 10:6
**analysis** [1] - 20:8
**AND** [3] - 30:16, 39:8
**anyways** [1] - 30:1
**appeal** [3] - 37:3, 37:5, 37:9
**Appeals** [4] - 12:1, 30:13, 30:14, 31:15
**APPEARANCES** [1] - 1:14
**appeared** [1] - 34:19
**appellate** [6] - 30:7, 30:12, 31:17, 36:14, 37:14, 37:15
**Appellate** [1] - 20:7
**applicable** [5] - 18:5, 19:12, 19:13, 24:12, 27:15
**applied** [5] - 17:10, 18:21, 20:3, 21:8, 27:17
**apply** [11] - 19:8, 20:2, 24:20, 25:12, 26:20, 27:1, 27:2, 27:18, 30:12
**appoint** [2] - 37:10, 37:14
**appointed** [1] - 37:1
**appointing** [1] - 37:17
**appropriate** [1] - 36:21
**argue** [3] - 9:1, 12:3, 23:23
**argued** [1] - 11:23
**argues** [1] - 8:21
**arguing** [1] - 23:21
**argument** [2] - 4:15, 5:9
**arguments** [1] - 27:7
**aspect** [2] - 8:13, 17:14
**aspects** [2] - 8:19, 17:10
**assert** [2] - 24:1, 26:13
**asserting** [1] - 27:9
**ASSIGNMENT** [1] - 1:5
**Assistant** [4] - 1:15, 5:4, 31:1, 34:12

**assumptions** [1] - 6:11
**AT** [1] - 38:4
**attach** [2] - 18:5, 27:14
**attempt** [1] - 24:11
**attorneys** [3] - 5:3, 30:22, 31:18
**attributable** [1] - 8:14
**available** [3] - 15:1, 24:14, 30:7
**awaiting** [1] - 36:21
**aware** [3] - 17:8, 21:6, 31:13

## B

**bags** [1] - 10:20
**Baker** [4] - 20:5, 20:18, 26:5, 26:6
**balance** [1] - 36:11
**balanced** [1] - 35:4
**BARBER** [1] - 1:5
**Barber** [1] - 1:11
**base** [1] - 28:2
**based** [10] - 5:12, 12:7, 13:13, 19:23, 23:19, 25:23, 28:19, 29:7, 29:11, 32:13
**basis** [1] - 18:12
**BE** [1] - 1:8
**Beavers** [1] - 7:14
**began** [1] - 20:8
**behalf** [5] - 1:15, 1:18, 12:9, 14:11, 32:10
**believability** [2] - 13:7, 13:9
**believes** [1] - 12:12
**best** [2] - 17:4, 21:2
**between** [2] - 18:1, 27:2
**beyond** [5] - 5:16, 6:8, 9:22, 10:8, 12:14
**biased** [1] - 13:21
**Bill** [1] - 36:6
**bitch** [1] - 8:10
**black** [1] - 32:7
**board** [1] - 36:11
**book** [2] - 25:6, 25:16
**Brenda** [3] - 5:20, 7:11, 11:6
**briefed** [1] - 11:23
**brought** [9] - 9:7, 22:22, 22:23, 23:4, 24:8, 28:22
**BY** [1] - 1:5

## C

**cannot** [6] - 6:15, 20:10, 21:12, 22:23, 28:2, 28:19
**CASE** [1] - 1:3

**case** [34] - 7:6, 10:14, 11:15, 13:12, 14:9, 15:13, 16:4, 17:6, 17:8, 18:6, 20:1, 20:6, 20:18, 21:9, 22:2, 22:21, 24:12, 25:20, 26:2, 27:15, 27:22, 27:23, 28:6, 28:18, 30:19, 33:10, 33:13, 33:20, 34:17, 35:18, 35:20, 35:21, 36:3, 37:17
**Case** [1] - 3:7
**cases** [1] - 34:1
**caught** [1] - 3:22
**CAUSE** [1] - 39:10
**caused** [1] - 7:11
**certain** [6] - 6:16, 6:17, 7:20, 23:12, 24:21, 25:11
**certainly** [2] - 6:7, 29:16
**CERTIFY** [1] - 39:7
**CHAMBERS** [2] - 3:5, 30:16
**chambers** [2] - 3:9, 5:2
**change** [2] - 23:13, 32:3
**changed** [3] - 23:18, 23:23, 26:17
**changes** [2] - 24:4, 24:6
**charge** [1] - 31:3
**charged** [1] - 7:5
**chief** [1] - 17:9
**circumstances** [1] - 23:22
**circumstantial** [1] - 7:18
**citation** [1] - 20:6
**cited** [1] - 24:13
**claim** [2] - 8:12, 21:3
**clear** [3] - 8:22, 23:18, 27:23
**clearly** [3] - 7:8, 12:22, 13:4
**client** [1] - 29:19
**Cocoves** [2] - 37:10, 37:15
**Code** [6] - 31:4, 34:8, 35:3, 35:9, 35:10, 36:13
**coming** [1] - 34:20
**COMMON** [1] - 1:1
**Common** [2] - 1:11, 1:21
**communication** [1] - 20:10
**communications** [2] - 17:16, 19:4
**community** [1] - 35:13
**competency** [1] - 17:11
**competent** [2] - 17:13, 20:17

**COMPLETE** [1] - 39:9

**complex** [1] - 33:23

**concern** [3] - 6:5, 6:9, 9:8

**CONCLUDED** [1] - 30:16

**concurrent** [1] - 33:12

**conduct** [5] - 17:16, 18:3, 18:10, 18:16, 19:5

**confused** [1] - 8:1

**consecutive** [4] - 33:10, 33:16, 36:1, 36:8

**consider** [8] - 9:17, 10:2, 10:16, 11:9, 20:14, 20:19, 26:7, 28:1

**considered** [3] - 34:15, 34:21, 35:1

**consistent** [1] - 35:14

**control** [2] - 19:2, 35:13

**conversation** [2] - 7:22, 15:5

**conveyed** [1] - 36:17

**convict** [1] - 6:10

**convicted** [1] - 35:8

**conviction** [1] - 21:11

**copy** [10] - 3:23, 17:1, 21:12, 21:16, 21:19, 22:4, 22:9, 24:16, 28:4

**correct** [3] - 19:21, 26:23, 29:6

**Corrections** [1] - 36:19

**cost** [1] - 37:15

**costs** [1] - 36:23

**counsel** [4] - 30:12, 37:1, 37:14, 37:15

**Counsel** [9] - 7:6, 7:23, 8:12, 17:1, 22:19, 22:21, 26:12, 30:7, 34:11

**Counsels** [1] - 9:4

**COUNTY** [1] - 1:1

**County** [3] - 1:11, 1:15, 1:21

**couple** [1] - 29:23

**course** [1] - 35:19

**court** [5] - 5:2, 29:16, 30:22, 34:10, 36:23

**COURT** [42] - 1:1, 3:6, 3:20, 3:22, 4:2, 4:7, 4:10, 4:19, 4:23, 6:21, 9:5, 11:13, 14:12, 16:2, 16:13, 22:11, 24:19, 25:3, 25:6, 25:10, 26:18, 27:1, 28:7, 28:14, 28:23, 29:15, 29:23,

30:8, 30:11, 30:17, 30:18, 31:10, 32:4, 32:9, 32:16, 33:2, 33:17, 33:19, 37:12, 37:20, 37:23, 38:3

**Court** [102] - 1:11, 1:21, 4:14, 4:17, 5:17, 6:19, 7:1, 7:3, 7:7, 7:23, 8:3, 8:7, 9:2, 9:4, 9:18, 9:23, 10:1, 10:2, 10:3, 11:8, 11:13, 11:15, 11:23, 13:16, 14:10, 15:3, 15:8, 16:16, 16:17, 16:18, 16:19, 16:20, 16:22, 17:7, 17:19, 17:21, 18:20, 18:21, 19:7, 19:11, 19:20, 20:6, 20:7, 20:9, 20:23, 21:3, 21:6, 21:23, 22:7, 22:13, 22:16, 23:2, 23:5, 23:9, 23:15, 23:18, 24:4, 24:15, 25:17, 27:7, 27:10, 27:12, 27:16, 27:17, 27:21, 30:14, 31:12, 31:13, 31:15, 31:22, 32:6, 32:12, 32:14, 32:22, 33:1, 33:14, 34:1, 34:4, 34:9, 34:15, 34:16, 34:20, 34:23, 35:1, 35:2, 35:4, 35:5, 35:7, 35:11, 35:13, 35:16, 35:22, 37:4, 37:9, 37:14, 37:19, 39:18

**Court's** [1] - 20:1

**Courthouse** [1] - 1:21

**courtroom** [1] - 9:21

**COURTROOM** [1] - 3:2

**cover** [1] - 6:1

**covered** [3] - 19:4, 19:5

**coverture** [1] - 20:13

**CR06-3339** [1] - 1:3

**CR2006-3339** [1] - 30:19

**CR99** [1] - 36:4

**create** [1] - 8:23

**credibility** [4] - 10:2, 12:13, 13:7, 13:9

**credit** [1] - 36:19

**crime** [1] - 7:17

**Criminal** [2] - 5:11, 6:20, 34:14

**criteria** [1] - 21:7

**current** [2] - 33:10, 33:16

**custody** [2] - 36:17, 36:20

### D

**dangerous** [1] - 10:10

**date** [6] - 13:23, 14:4, 15:18, 15:21, 29:20, 36:3

**Davis** [13] - 7:13, 7:22, 8:8, 11:10, 12:18, 13:8, 13:17, 14:14, 14:21, 15:4, 15:13, 15:17, 16:4

**Davis's** [1] - 10:22

**DAY** [1] - 38:3

**days** [4] - 4:16, 36:20, 37:5

**dealt** [1] - 18:2

**death** [1] - 7:11

**December** [2] - 7:9, 7:10

**decided** [1] - 19:11

**decision** [1] - 31:23

**declared** [1] - 27:10

**declaring** [1] - 20:16

**decline** [2] - 11:16, 34:4

**DEFENDANT** [1] - 1:6

**Defendant** [33] - 1:18, 3:14, 5:2, 5:16, 6:5, 7:15, 7:16, 7:21, 8:3, 8:8, 8:11, 8:16, 17:5, 18:15, 18:16, 22:9, 30:21, 33:4, 33:7, 34:10, 34:13, 35:7, 35:12, 35:17, 35:20, 35:23, 36:5, 36:7, 36:9, 36:12, 36:16, 36:22, 37:23

**Defendant's** [2] - 11:21, 34:7

**Defense** [8] - 8:12, 15:11, 16:23, 21:12, 21:14, 21:19, 22:19, 22:21

**defining** [1] - 20:8

**degree** [1] - 31:14

**denial** [1] - 21:19

**denied** [2] - 21:4, 26:3

**deny** [4] - 9:4, 15:8, 16:23, 24:15

**Department** [1] - 36:18

**desires** [2] - 28:6, 31:23

**despite** [2] - 9:18, 9:19

**Detective** [4] - 7:13, 7:14, 11:10

**detectives** [2] - 9:11, 9:14

**determine** [4] - 7:3, 10:1, 10:5, 23:16

**determined** [1] - 26:1

**differ** [1] - 8:17

**difference** [1] - 23:13

**different** [1] - 4:18

**direct** [2] - 7:19, 7:20

**directly** [1] - 13:7

**discharge** [1] - 21:2

**disclosed** [1] - 28:15

**disclosure** [1] - 28:9

**discontent** [1] - 32:1

**discovered** [2] - 12:7, 13:15

**discretion** [1] - 37:19

**discussing** [1] - 31:17

**DISCUSSION** [2] - 3:4, 30:15

**dismiss** [5] - 3:19, 4:2, 16:14, 17:2, 25:19

**dismissed** [1] - 23:8

**disposition** [1] - 16:8

**distinct** [1] - 8:4

**divulge** [1] - 29:12

**divulging** [1] - 22:18

**done** [2] - 3:20, 20:11

**doubt** [7] - 5:16, 6:3, 6:9, 9:22, 10:8, 12:15, 32:2

**down** [1] - 15:3

**draft** [1] - 15:14

**dropped** [1] - 8:16

**due** [3] - 11:4, 33:12, 34:2

**during** [8] - 5:12, 12:16, 15:1, 20:12, 23:12, 24:2, 25:9, 35:19

### E

**either** [1] - 20:12

**elected** [1] - 17:12

**element** [1] - 7:5

**elicited** [4] - 14:5, 15:11, 15:20, 15:23

**eligible** [3] - 35:12, 36:5, 36:7

**embellish** [1] - 5:8

**enlarge** [1] - 5:8

**entanglements** [1] - 33:22

**ENTITLED** [1] - 39:10

**entry** [1] - 37:6

**Esquire** [3] - 1:16, 1:18, 1:19

**essential** [1] - 7:5

**establish** [4] - 12:14, 18:12, 22:3, 22:5

**established** [2] - 20:21, 21:18

**establishes** [1] -

**eventually** [1] - 16:8

**evidence** [22] - 5:13, 5:14, 6:13, 7:2, 7:4, 7:7, 7:9, 7:18, 7:19, 7:20, 7:21, 9:16, 10:6, 12:7, 12:13, 20:15, 20:19, 24:22, 25:6, 25:12, 25:14, 26:7

**Evidence** [4] - 24:20, 25:10, 26:20, 28:10

**exactly** [2] - 14:17, 27:6

**EXAMINATION** [1] - 2:4

**exception** [2] - 11:22, 18:8

**exceptions** [2] - 24:21, 25:11

**excerpt** [1] - 1:12

**excluded** [1] - 29:5

**execution** [1] - 38:1

**exempt** [1] - 28:9

**exercised** [1] - 37:5

**exert** [3] - 17:15, 17:19, 26:12

**exerting** [1] - 27:9

**EXHIBITS** [1] - 2:2

**expressing** [1] - 6:14

**extent** [2] - 19:3, 27:12

### F

**face** [1] - 26:5

**fact** [21] - 9:18, 9:19, 10:4, 10:19, 11:4, 11:17, 14:7, 14:21, 15:6, 15:20, 19:16, 19:20, 20:22, 21:6, 24:1, 24:9, 27:17, 33:12, 34:2, 36:9

**factors** [2] - 6:18, 35:5

**facts** [2] - 7:20, 23:22

**family** [1] - 32:20

**far** [1] - 32:12

**favor** [2] - 23:10, 32:2

**favorable** [1] - 7:2

**fees** [2] - 37:1

**file** [3] - 3:14, 3:23, 4:17

**filed** [5] - 3:11, 3:21, 4:11, 12:9, 16:17

**filing** [1] - 37:6

**fine** [2] - 37:16, 37:21

**first** [2] - 5:1, 8:19

**flies** [1] - 26:5

**FOLLOWING** [2] - 3:4, 30:16

**following** [1] - 1:12

**Fonseca** [2] - 12:14,

12:17
**FOR** [1] - 38:3
**forced** [1] - 10:1
**FOREGOING** [1] - 39:8
**forward** [1] - 33:15
**frame** [2] - 15:11, 16:1
**frankly** [2] - 10:1, 33:21
**front** [3] - 14:15, 19:1, 19:14
**fully** [2] - 11:23, 12:7
**future** [1] - 36:20

## G

**garnered** [1] - 14:21
**given** [4] - 31:19, 33:10, 36:12, 36:19
**Grand** [2] - 26:11
**grand** [37] - 16:18, 17:5, 19:1, 19:14, 20:3, 20:14, 20:19, 21:5, 21:8, 21:13, 21:16, 21:20, 22:4, 22:10, 22:15, 23:13, 24:5, 24:7, 24:8, 24:14, 24:20, 24:22, 25:9, 25:13, 25:21, 26:6, 26:19, 26:21, 27:19, 28:1, 28:9, 28:13, 28:21, 29:2, 29:4, 29:13, 30:6
**grant** [2] - 6:19, 9:2
**granted** [1] - 36:10
**great** [1] - 11:13
**grief** [1] - 32:7
**guess** [1] - 17:23
**guilt** [3] - 9:22, 10:8, 12:14
**guilty** [3] - 5:16, 10:14, 31:2

## H

**HAD** [1] - 39:9
**hands** [1] - 32:12
**happy** [2] - 18:4, 27:13
**head** [1] - 8:14
**hear** [1] - 7:7
**heard** [2] - 7:12, 8:1
**HEARING** [1] - 39:10
**hearing** [2] - 27:7, 34:8
**hearings** [2] - 24:21, 24:23
**hearsay** [5] - 25:8, 29:3, 29:5, 29:7, 29:11
**held** [2] - 1:13, 34:8
**HELD** [3] - 3:5, 30:15, 30:17
**hereby** [1] - 18:14
**HEREBY** [1] - 39:7

**herself** [2] - 17:12, 20:17
**high** [2] - 13:18, 31:13
**higher** [3] - 29:16, 34:4, 37:4
**history** [1] - 35:17
**honest** [2] - 16:3, 17:22
**honestly** [2] - 22:13, 22:21
**Honor** [9] - 4:13, 12:5, 15:9, 16:15, 19:15, 19:21, 26:4, 27:5, 37:8
**Honorable** [1] - 1:10
**husband** [2] - 6:15, 18:2

## I

**idea** [2] - 15:22
**IDENTIFIED** [1] - 2:2
**impact** [3] - 13:10, 31:16, 34:23
**impacted** [2] - 14:8, 14:9
**impermissible** [1] - 10:12
**impose** [2] - 32:14, 34:6
**imposition** [1] - 32:12
**impression** [1] - 4:18
**IN** [5] - 1:1, 3:5, 30:16, 30:17, 39:9
**inapplicable** [1] - 21:22
**inasmuch** [1] - 21:4
**incarcerated** [4] - 13:5, 14:7, 29:20, 33:8
**incarceration** [2] - 33:11, 33:16
**incompetent** [3] - 20:15, 20:19, 26:7
**incorrect** [1] - 27:20
**indicate** [5] - 5:1, 12:6, 13:15, 28:14, 33:3
**indicated** [5] - 7:6, 8:16, 12:17, 12:23, 16:22
**indicating** [3] - 12:10, 23:5, 23:7
**indictment** [20] - 3:19, 9:19, 16:14, 17:6, 19:15, 19:19, 21:1, 21:10, 22:2, 22:8, 22:22, 23:3, 23:8, 23:19, 24:5, 24:8, 25:19, 25:23, 28:3, 28:21
**individuals** [1] - 28:20
**infer** [2] - 7:19, 9:9

**inference** [1] - 11:3
**inferences** [4] - 9:7, 9:13, 10:10, 10:13
**influence** [1] - 13:19
**information** [17] - 5:21, 6:4, 8:2, 12:19, 13:1, 13:3, 13:14, 14:14, 14:20, 15:1, 22:23, 23:4, 23:20, 26:1, 28:2, 28:3, 28:19
**informed** [1] - 4:16
**inherent** [1] - 26:10
**initial** [1] - 25:18
**initio** [5] - 19:16, 19:20, 21:1, 22:3, 22:8
**injustice** [1] - 19:22
**innocence** [1] - 5:15
**inquire** [1] - 21:15
**institution** [2] - 13:5, 36:22
**instructed** [2] - 18:13, 18:14
**instrumental** [1] - 16:4
**insufficient** [1] - 9:21
**interrelatedness** [1] - 12:8
**investigated** [1] - 9:20
**investigation** [1] - 21:22
**investigators** [2] - 29:1, 29:2
**involved** [1] - 34:2
**irrelevant** [1] - 14:22
**IS** [1] - 39:8
**issue** [2] - 16:9, 17:8
**issues** [2] - 17:9, 34:3
**IT** [1] - 1:8
**itself** [2] - 20:20, 26:8

## J

**James** [1] - 1:10
**Janet** [10] - 7:12, 8:7, 8:15, 9:12, 10:16, 12:11, 17:4, 20:16, 23:11, 29:12
**job** [1] - 11:17
**Judge** [17] - 4:6, 5:10, 6:22, 9:6, 11:12, 14:13, 22:12, 25:7, 25:20, 26:23, 27:20, 28:11, 30:5, 30:9, 32:20, 33:7, 37:18
**JUDGE** [1] - 1:5
**judgment** [1] - 37:6
**juncture** [1] - 9:23, 16:16, 19:23
**juries** [1] - 26:21
**jurors** [2] - 11:15,

28:9
**Jury** [1] - 26:12
**jury** [45] - 6:10, 7:19, 8:22, 9:8, 9:13, 9:16, 10:9, 11:14, 16:18, 17:5, 19:1, 19:14, 19:17, 20:3, 20:14, 20:19, 21:5, 21:8, 21:13, 21:16, 21:20, 22:4, 22:10, 22:15, 23:14, 24:5, 24:7, 24:8, 24:15, 24:20, 24:23, 25:9, 25:13, 25:21, 26:6, 26:19, 27:19, 28:1, 28:13, 28:21, 29:3, 29:4, 29:13, 30:6, 33:13
**jury's** [1] - 13:10
**justice** [3] - 8:23, 11:18, 32:7

## K

**kill** [1] - 8:10
**kind** [1] - 29:18

## L

**laid** [1] - 25:19
**late** [1] - 32:23
**law** [9] - 17:22, 22:21, 24:13, 25:21, 27:22, 27:23, 28:6, 28:18, 35:10
**leave** [2] - 11:12, 37:18
**legal** [1] - 33:21, 34:3
**letter** [1] - 33:4
**letters** [1] - 34:22
**life** [2] - 36:1, 36:11
**light** [1] - 7:2
**likely** [1] - 13:10
**lines** [1] - 11:8
**linked** [1] - 5:19
**Loisel** [9] - 1:16, 5:5, 6:21, 9:6, 14:12, 22:11, 31:1, 32:16, 34:13
**LOISEL** [17] - 6:22, 10:15, 14:13, 22:12, 25:7, 25:17, 26:23, 27:20, 28:11, 28:17, 29:6, 29:10, 30:5, 30:9, 32:20, 33:6, 37:18
**look** [3] - 23:2, 23:15, 24:4
**looking** [2] - 26:18, 28:7, 29:19
**lose** [1] - 8:22
**LUCAS** [1] - 1:1
**Lucas** [3] - 1:11, 1:15, 1:21

## M

**major** [1] - 9:7
**man's** [2] - 32:6, 32:7
**manifest** [3] - 8:23, 9:1, 11:18, 19:22
**marijuana** [1] - 13:19
**MARKED** [1] - 2:2
**material** [1] - 28:8
**materials** [1] - 28:15
**matter** [12] - 11:22, 15:15, 15:20, 16:7, 19:16, 21:7, 31:1, 31:14, 31:18, 34:19, 37:7, 37:11
**matters** [3] - 3:10, 18:19, 34:21
**McDevitt** [3] - 1:21, 34:9, 39:17
**MCELROY** [7] - 3:17, 3:21, 4:6, 4:9, 5:10, 9:6, 30:6
**McElroy** [4] - 1:19, 5:3, 30:23, 34:11
**mean** [5] - 4:5, 25:1, 25:3, 27:12, 28:10
**meaning** [1] - 12:20
**means** [1] - 24:10
**members** [2] - 32:18, 32:21
**men** [1] - 16:9
**MERCER** [1] - 25:15
**merely** [2] - 5:12, 9:11
**merit** [1] - 15:7
**Michael** [1] - 1:16
**middle** [1] - 17:23
**might** [1] - 23:17
**mind** [2] - 9:3, 17:7
**minds** [1] - 8:17
**minimal** [1] - 18:22
**miscarriage** [3] - 8:23, 9:2, 11:18
**mistaken** [3] - 12:16, 17:20, 20:4
**mitigation** [1] - 31:12
**Montague** [1] - 6:13
**month** [1] - 13:23
**moot** [1] - 21:21
**moreover** [1] - 6:4
**morning** [2] - 4:22, 32:23
**most** [3] - 7:2, 33:23, 34:18
**mother** [3] - 5:23, 8:3, 12:21
**motion** [43] - 3:14, 3:15, 3:17, 3:18, 4:2, 4:3, 4:7, 4:10, 4:15, 4:17, 4:22, 5:7, 5:10, 5:11, 6:2, 6:19, 7:1, 9:3, 9:4, 9:8, 11:21, 12:2, 12:6, 12:9,

16:11, 16:13, 16:17, 16:22, 16:23, 17:2, 20:4, 23:10, 23:21, 24:11, 24:16, 24:17, 24:18, 25:18, 26:3, 28:4, 28:12, 30:3
**motions** [2] - 4:6, 4:12
**motive** [1] - 11:11
**motor** [1] - 13:2
**move** [1] - 16:11
**MR** [46] - 3:17, 3:21, 4:1, 4:5, 4:6, 4:9, 4:13, 4:21, 5:10, 6:22, 9:6, 10:15, 12:5, 14:13, 15:9, 16:12, 16:15, 22:12, 25:1, 25:4, 25:7, 25:17, 26:4, 26:23, 27:5, 27:20, 28:11, 28:17, 29:6, 29:7, 29:10, 29:21, 29:22, 30:5, 30:6, 30:9, 31:9, 31:21, 32:5, 32:11, 32:20, 33:6, 33:18, 37:8, 37:18, 37:22
**MS** [1] - 25:15
**murder** [4] - 5:20, 5:22, 31:4, 35:8
**murdered** [1] - 11:7
**must** [3] - 10:16, 18:17, 21:17

### N

**Navarre** [2] - 7:11, 11:6
**Navarre's** [1] - 5:20
**need** [5] - 3:11, 21:17, 22:1, 22:3, 22:20
**needs** [1] - 37:5
**Neil** [1] - 1:19
**new** [8] - 3:15, 3:17, 4:15, 4:17, 6:2, 12:3, 12:7, 14:10
**Next** [1] - 12:2
**night** [5] - 10:18, 10:21, 10:22, 11:4, 11:6
**nights** [2] - 10:17, 10:21
**NO** [3] - 1:3, 2:2, 2:4
**non** [1] - 25:5
**non-privilege** [1] - 25:5
**note** [3] - 3:13, 34:16
**noted** [3] - 11:22, 20:9, 33:19
**Nothing** [1] - 37:22
**nothing** [4] - 24:6, 24:10, 26:16, 32:15
**notice** [1] - 36:13
**number** [6] - 16:11, 29:1, 30:19, 32:20, 33:21, 36:3
**Number** [1] - 3:7

### O

**object** [1] - 33:18
**objection** [1] - 37:17
**Objection** [1] - 33:19
**obligated** [1] - 33:15
**observed** [1] - 18:16
**obtained** [1] - 13:3
**obviously** [1] - 5:17
**Obviously** [1] - 7:18
**occur** [1] - 15:14
**occurred** [6] - 15:18, 15:22, 17:6, 17:17, 18:10, 18:17
**OCTOBER** [2] - 3:1, 38:4
**October** [1] - 1:10
**OF** [6] - 1:1, 1:2, 2:4, 39:9, 39:10
**offense** [4] - 7:5, 33:8, 35:8, 35:21
**offered** [2] - 6:6, 9:20
**Official** [2] - 1:21, 39:18
**Ohio** [14] - 1:22, 3:8, 7:4, 7:8, 12:23, 14:4, 15:12, 15:16, 20:7, 24:14, 26:19, 30:20, 35:10, 36:18
**OHIO** [2] - 1:1, 1:2
**old** [1] - 24:18
**ON** [1] - 38:3
**one** [18] - 4:8, 5:19, 8:5, 10:22, 12:18, 16:19, 16:23, 17:8, 17:11, 20:11, 20:23, 21:5, 22:7, 24:23, 32:14, 32:23, 33:23, 34:18
**One** [1] - 34:17
**ongoing** [1] - 21:21
**OPEN** [1] - 30:17
**opinions** [1] - 11:14
**opportunity** [10] - 7:7, 13:16, 16:20, 22:17, 23:2, 23:15, 29:17, 31:11, 31:19, 33:2
**OR** [1] - 2:2
**oral** [5] - 4:14, 4:22, 12:2, 12:6, 34:15
**order** [5] - 4:23, 5:6, 21:15, 22:3, 22:5
**ordered** [5] - 16:18, 23:11, 33:15, 36:17, 36:22
**original** [1] - 23:6
**outcome** [3] - 13:11, 13:12, 14:9
**overcome** [1] - 5:14
**overrule** [3] - 11:21, 16:10, 30:3

### P

**parole** [3] - 36:7, 36:10, 36:11
**part** [6] - 6:12, 8:5, 8:13, 8:18, 33:22
**particular** [1] - 21:9
**particularized** [3] - 21:17, 22:1, 22:19
**parties** [1] - 18:11
**parts** [1] - 8:4
**party** [3] - 18:12, 18:18, 27:4
**pay** [2] - 36:22, 37:13
**penal** [1] - 13:5
**pending** [2] - 4:3, 4:12
**penitent** [1] - 18:2
**performed** [1] - 35:21
**permitted** [3] - 9:9, 9:16, 37:1
**perpetrator** [1] - 7:17
**person** [1] - 27:4
**pick** [2] - 10:19, 11:5
**pin** [1] - 15:3
**place** [3] - 15:2, 15:5, 15:6
**PLAINTIFF** [1] - 1:3
**Plaintiff** [1] - 1:15
**PLEAS** [1] - 1:1
**Pleas** [2] - 1:12, 1:21
**plenty** [1] - 30:1
**point** [14] - 7:15, 9:4, 10:4, 11:19, 14:22, 16:10, 19:12, 21:9, 21:23, 30:4, 30:10, 32:2, 33:7, 37:9
**pointed** [1] - 8:11
**pointing** [1] - 7:21
**points** [1] - 7:16
**position** [1] - 10:9
**possibly** [1] - 23:17
**post** [1] - 36:6
**PRC** [1] - 36:5
**pre-1996** [1] - 35:10
**PRECEDING** [1] - 30:15
**premised** [1] - 19:19
**prepare** [1] - 6:23
**prepared** [2] - 34:17, 34:18
**presence** [6] - 17:17, 18:10, 18:13, 18:17, 20:12, 27:3
**present** [8] - 5:2, 5:18, 15:12, 18:6, 27:15, 30:21, 32:21, 34:10
**presented** [9] - 7:4, 14:14, 17:8, 19:6, 20:5, 22:20, 29:4, 31:8, 32:22
**presentence** [1] -

34:17
**preside** [1] - 34:1
**pressed** [2] - 12:23, 14:3
**presumption** [2] - 5:15, 11:19
**previously** [2] - 21:5, 32:22
**principles** [1] - 35:1
**prison** [1] - 35:14
**privilege** [25] - 17:10, 17:15, 17:19, 18:1, 18:5, 18:21, 19:7, 19:12, 20:2, 20:9, 20:20, 20:21, 24:2, 25:4, 25:5, 25:7, 25:22, 26:8, 26:10, 26:13, 27:10, 27:14, 29:8
**privileged** [10] - 23:1, 23:4, 23:17, 23:20, 26:1, 28:2, 28:3, 28:8, 28:15, 28:19
**privileges** [2] - 26:22, 27:1
**probability** [1] - 31:14
**problem** [2] - 23:7, 29:9
**problems** [1] - 37:16
**proceed** [2] - 3:9, 31:15
**proceeded** [1] - 19:17
**proceeding** [1] - 27:19
**proceedings** [7] - 1:9, 1:12, 24:23, 25:13, 26:19, 26:20, 35:20
**PROCEEDINGS** [2] - 30:17, 39:9
**process** [2] - 31:17, 33:22
**prosecution** [1] - 36:23
**Prosecution** [1] - 7:3
**Prosecutor** [7] - 1:15, 5:5, 6:16, 19:2, 27:23, 31:1, 34:13
**protecting** [1] - 21:21
**prove** [4] - 6:6, 6:8, 9:21, 10:7
**provide** [1] - 22:9
**provided** [4] - 12:20, 16:19, 17:1, 22:15
**PSIs** [1] - 35:18
**public** [1] - 32:18
**purportedly** [1] - 14:1
**purposely** [1] - 7:11
**purposes** [2] - 35:2, 35:14
**pursuant** [3] - 31:2, 34:8, 34:14

**pursue** [1] - 9:15
**pursued** [1] - 9:12
**put** [1] - 5:13

4

### Q

**questioning** [1] - 18:7
**questions** [1] - 6:16
**quite** [1] - 22:12
**Quite** [1] - 22:21
**quoting** [1] - 17:21

### R

**raised** [1] - 9:8
**rather** [1] - 18:3
**reach** [1] - 10:13
**read** [4] - 22:17, 27:21, 28:5, 28:16
**ready** [1] - 30:4
**really** [2] - 5:18, 6:6
**reason** [5] - 19:10, 20:23, 21:11, 21:18, 31:7
**reasonable** [6] - 5:16, 6:8, 8:17, 9:22, 10:8, 12:15
**reasons** [2] - 21:20, 22:6
**rebuttal** [1] - 9:5
**received** [3] - 5:21, 13:1, 34:23
**recently** [1] - 34:19
**recess** [1] - 38:2
**recidivism** [1] - 35:5
**recitation** [2] - 13:17, 26:5
**recognized** [1] - 18:9
**record** [5] - 3:6, 10:16, 12:6, 30:18, 34:15
**references** [1] - 15:16
**reflect** [2] - 3:7, 30:18
**Refresh** [1] - 24:19
**refuse** [1] - 20:18
**regarding** [3] - 5:22, 10:11, 20:10
**Rehabilitation** [1] - 36:18
**rehash** [1] - 22:13
**related** [1] - 34:21
**relates** [2] - 14:1, 25:1
**relationship** [2] - 11:19, 18:3
**relative** [2] - 17:16, 27:7
**release** [1] - 30:13
**remanded** [1] - 38:1
**remember** [3] - 13:21, 25:12, 28:23
**REMEMBERED** [1] -

1:8
**remembers** [3] - 8:4, 8:7, 15:4
**rendered** [2] - 19:18, 31:3
**renewed** [2] - 3:18, 4:7
**Renewed** [1] - 4:2
**Reporter** [3] - 1:21, 34:9, 39:18
**reports** [2] - 34:17, 34:22
**represent** [1] - 37:10
**represented** [3] - 5:4, 30:23, 34:12
**request** [2] - 15:7, 22:14
**required** [2] - 35:5, 35:5
**requirement** [1] - 21:14
**respect** [11] - 6:23, 11:3, 11:14, 14:13, 16:7, 18:15, 22:14, 22:18, 24:14, 25:20, 26:21
**respectfully** [1] - 22:7
**response** [5] - 6:23, 23:7, 25:18, 25:20, 28:5
**responsibility** [1] - 19:21
**restitution** [1] - 36:23
**resulted** [1] - 18:21
**resulting** [3] - 13:11, 17:6, 19:15
**resurrect** [1] - 24:11
**resurrection** [1] - 24:18
**revealed** [2] - 35:18, 35:19
**review** [3] - 16:20, 29:17, 33:3
**reviewed** [1] - 33:4
**Revised** [6] - 31:4, 34:8, 35:3, 35:9, 35:10, 36:13
**rewarded** [1] - 33:11
**riding** [1] - 13:1
**rights** [3] - 34:14, 36:13, 36:14
**ROBERT** [1] - 1:5
**Robert** [12] - 1:18, 3:8, 7:10, 9:12, 9:15, 10:19, 11:5, 12:22, 26:10, 26:11, 27:9, 30:20
**rock** [1] - 8:14
**role** [1] - 10:4
**Ronnie** [1] - 1:18
**rough** [1] - 15:14
**RPR** [2] - 1:21, 39:17
**rule** [2] - 24:22, 25:14, 28:7, 32:1
**Rule** [7] - 5:11, 6:20,

24:20, 25:10, 26:19, 28:10, 34:14
**ruled** [4] - 22:14, 23:9, 23:22, 24:12
**rules** [1] - 25:12
**Rules** [1] - 26:19
**ruling** [5] - 16:21, 18:20, 20:1, 22:18, 23:5

## S

**sat** [1] - 5:17
**school** [1] - 17:22
**scope** [1] - 20:8
**seal** [3] - 29:14, 29:15, 30:10
**second** [4] - 4:8, 6:14, 17:14, 22:9
**secrecy** [1] - 21:6, 21:8, 21:21
**Section** [4] - 31:4, 34:9, 35:3, 36:13
**section** [2] - 35:6, 35:15
**Sections** [1] - 35:9
**see** [2] - 3:15, 29:14
**Senate** [1] - 36:6
**sent** [1] - 33:5
**sentence** [11] - 31:7, 32:13, 32:14, 33:9, 33:14, 34:6, 35:22, 36:2, 37:4, 37:6, 38:2
**sentenced** [1] - 35:23
**SENTENCING** [1] - 39:10
**sentencing** [9] - 1:8, 3:10, 3:12, 4:20, 30:21, 31:2, 34:7, 34:20, 35:2
**separate** [1] - 33:8
**September** [4] - 3:13, 4:11, 5:7, 31:3
**seriousness** [1] - 35:4
**served** [3] - 36:1, 36:8, 36:20
**services** [1] - 37:13
**serving** [1] - 36:2
**several** [3] - 3:10, 15:15, 29:2
**Seymour** [2] - 7:14, 11:10
**sheriff** [1] - 38:1
**show** [3] - 7:9, 21:14, 21:17
**shown** [1] - 31:23
**shows** [2] - 12:8, 13:4
**significance** [3] - 13:6, 15:10, 18:23
**significant** [3] - 20:13, 34:3, 35:17
**simple** [1] - 24:9
**simply** [2] - 23:10,

25:23
**siting** [1] - 20:5
**snitch** [1] - 8:10
**solely** [5] - 22:23, 23:4, 23:19, 25:23, 28:18
**sorry** [2] - 12:18, 26:17
**sort** [1] - 30:2
**source** [1] - 12:19
**specific** [2] - 13:23, 15:11
**specifically** [3] - 12:22, 15:13, 27:13
**speculating** [1] - 17:3
**Spiros** [1] - 37:10
**spousal** [7] - 17:9, 17:15, 17:19, 18:21, 19:7, 19:12, 20:1, 20:9, 20:21, 26:9, 26:13, 27:10, 29:8
**spouse** [1] - 20:10
**spouses** [1] - 27:2
**Stacey** [2] - 1:21, 39:17
**stand** [2] - 14:4, 23:6
**State** [28] - 3:8, 5:4, 5:13, 6:22, 7:4, 7:8, 8:21, 9:1, 11:1, 12:10, 12:12, 12:23, 14:4, 15:12, 15:16, 15:20, 15:23, 20:5, 22:15, 23:6, 24:13, 24:16, 26:15, 30:20, 30:23, 33:6, 33:9, 34:12
**STATE** [1] - 1:2
**state** [1] - 36:21
**State's** [3] - 23:10, 25:18, 37:15
**statement** [9] - 8:5, 8:6, 8:13, 8:20, 14:1, 14:17, 16:5, 31:16, 34:5
**statements** [9] - 6:2, 18:9, 18:15, 27:2, 27:3, 31:11, 31:20, 32:22, 34:15
**states** [3] - 27:22, 28:8, 28:18
**statute** [2] - 20:21, 32:11
**stayed** [1] - 10:21
**step** [1] - 10:3
**still** [1] - 29:8
**Street** [1] - 1:22
**strike** [1] - 11:1
**subject** [1] - 36:10
**submitted** [1] - 7:8
**subsequent** [3] - 14:6, 14:21, 21:11
**subsequently** [1] - 13:3
**sufficient** [5] - 5:14, 7:4, 7:8, 10:5, 12:12
**suggestion** [1] - 11:16

**suggests** [3] - 27:23, 28:12, 28:20
**supplement** [1] - 21:3
**system** [1] - 11:14

## T

**tail** [1] - 29:18
**talks** [1] - 9:6
**term** [1] - 35:23
**testified** [15] - 6:12, 8:8, 14:23, 15:23, 17:5, 19:1, 19:14, 24:6, 24:7, 24:9, 25:8, 26:16, 28:21, 29:1, 29:2
**testify** [11] - 6:15, 10:17, 10:18, 17:11, 17:12, 18:18, 20:10, 23:11, 24:3, 27:8, 27:11
**testifying** [1] - 20:16
**testimony** [28] - 6:5, 7:12, 7:16, 9:9, 9:10, 9:17, 9:20, 10:11, 12:11, 12:16, 14:16, 16:3, 16:6, 18:14, 18:22, 19:9, 20:3, 21:5, 21:13, 21:16, 21:20, 22:4, 22:10, 24:5, 24:15, 24:20, 25:22, 29:3
**THAT** [1] - 39:8
**THE** [49] - 1:1, 3:4, 3:6, 3:20, 3:22, 4:2, 4:7, 4:10, 4:19, 4:23, 6:21, 9:5, 11:13, 14:12, 16:2, 16:13, 22:11, 24:19, 25:3, 25:6, 25:10, 26:18, 27:1, 28:7, 28:14, 28:23, 29:15, 29:23, 30:8, 30:11, 30:15, 30:16, 30:18, 31:10, 32:4, 32:9, 32:16, 33:2, 33:17, 33:19, 37:12, 37:20, 37:23, 38:3, 39:7, 39:8, 39:9, 39:10
**therefore** [5] - 21:2, 23:6, 26:2, 32:15, 35:22
**thickets** [1] - 33:21
**third** [8] - 8:12, 8:13, 8:18, 18:10, 18:12, 18:17, 27:4
**three** [3] - 8:4, 16:9, 16:11
**ties** [1] - 32:11
**to-wit** [1] - 1:13
**today** [4] - 5:18, 24:17, 30:21, 33:15
**Toledo** [3] - 15:2, 15:5, 33:12
**took** [3] - 15:2, 15:5, 33:12
**towards** [1] - 13:22

**TRANSCRIPT** [1] - 39:9
**transcript** [14] - 14:15, 15:15, 16:18, 16:21, 16:23, 17:1, 22:15, 22:16, 22:17, 22:18, 22:20, 23:3, 23:16, 28:20
**transportation** [1] - 36:21
**trial** [26] - 3:16, 3:17, 4:15, 4:17, 5:12, 5:17, 6:2, 6:3, 6:14, 12:3, 12:7, 13:15, 14:10, 14:14, 15:1, 17:18, 19:6, 19:13, 19:17, 19:19, 21:10, 23:12, 24:2, 24:10, 27:18, 33:13
**tried** [1] - 15:3
**trier** [2] - 10:4, 11:17
**TRUE** [1] - 39:8
**two** [11] - 4:5, 4:6, 4:11, 6:18, 8:10, 8:19, 10:20, 17:2, 17:10, 21:2, 34:16

## U

**Ultimately** [1] - 8:21
**unable** [1] - 10:13
**uncertain** [1] - 5:21
**under** [12] - 4:18, 13:19, 24:22, 28:9, 29:4, 29:14, 29:15, 30:9, 35:6, 36:13, 36:14, 37:2
**UNDERSIGNED** [1] - 39:7
**understood** [1] - 18:1
**undertaking** [1] - 10:10
**undertook** [1] - 10:9
**unequivocally** [1] - 8:11
**unfettered** [1] - 19:2
**unhappy** [2] - 32:4, 32:5
**unlike** [1] - 5:11
**unsure** [1] - 12:17
**up** [5] - 3:22, 10:19, 11:5, 34:4, 37:19

## V

**valid** [2] - 20:20, 26:8
**various** [1] - 24:3
**Vasquez** [1] - 7:13
**vehicle** [1] - 13:2
**verbatim** [1] - 28:5
**verdict** [7] - 4:4, 10:14, 11:20, 13:11, 19:18, 31:2
**versus** [2] - 3:8,

5

30:20
**victim** [2] - 32:21, 34:23
**view** [1] - 7:1
**violate** [2] - 20:20, 26:8
**violated** [1] - 20:22
**violation** [2] - 31:4, 35:9
**void** [5] - 19:16, 19:20, 21:1, 22:2, 22:8

## W

**waiving** [1] - 20:17
**wants** [4] - 7:23, 8:12, 23:23, 37:20
**WAS** [1] - 3:4
**WERE** [1] - 30:17
**WHEREUPON** [3] - 3:4, 30:15, 38:3
**white** [1] - 32:6
**wife** [3] - 6:15, 17:4, 18:2
**WILSON** [5] - 1:5, 29:21, 31:9, 31:21, 32:5
**Wilson** [47] - 1:18, 3:8, 5:19, 5:23, 6:6, 6:7, 6:10, 6:12, 7:10, 7:12, 8:7, 8:15, 9:12, 9:15, 9:20, 10:16, 10:20, 11:5, 12:9, 12:11, 12:15, 13:2, 13:4, 13:22, 14:2, 14:7, 14:11, 17:4, 17:11, 17:15, 17:17, 17:18, 18:22, 19:8, 20:16, 21:2, 23:11, 26:11, 27:8, 27:9, 29:12, 30:20, 31:6, 32:10, 37:4
**Wilson's** [4] - 6:19, 9:22, 10:9, 10:11
**WINGATE** [18] - 4:1, 4:5, 4:13, 4:21, 12:5, 15:9, 16:12, 16:15, 25:1, 25:4, 26:4, 27:5, 29:7, 29:22, 32:11, 33:18, 37:8, 37:22
**Wingate** [11] - 1:18, 5:3, 14:18, 14:20, 14:23, 23:23, 27:21, 28:12, 30:22, 32:10, 34:11
**wise** [1] - 16:9
**wish** [6] - 31:11, 31:20, 32:9, 32:17, 32:18, 37:8
**wit** [1] - 1:13
**withstanding** [1] - 12:11
**witness** [7] - 5:19, 5:20, 14:4, 18:7, 18:12, 18:13, 32:17
**WITNESSES** [1] -

2:4
**witnesses** [3] - 6:17, 10:3, 21:21
**worst** [1] - 35:21
**written** [1] - 6:23

## Y

**year** [3] - 13:23, 14:5, 15:16
**years** [4] - 29:23, 33:13, 35:23, 36:8
**yesterday** [1] - 3:21

## Z

**zeal** [1] - 15:12