UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WILSON, | ) | 3:12CV0014 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| EDWARD T. SHELDON, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, MAG. JUDGE

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the court is the petition of Robert Wilson ("Wilson")

for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petitioner is in

the custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case of State of Ohio v. Wilson, Case No. 2006-CR-

3339 (Lucas County Oct. 10, 2008).  (Doc. 12, RX 5.)  For the following reasons, the

magistrate judge recommends that the petition be denied.

The petitioner Wilson filed a petition pro se for a writ of habeas corpus,

arising out of his 2008 conviction (for a December 1993 murder) in the Lucas

County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition, Wilson pro se

raised ten grounds for relief:

> 1.  Petitioner's Due Process Rights were Violated when State of Ohio
> bolstered the credibility of its witnesses.

2.  Petitioner's Due Process Rights were violated when his request to examine the grand jury testimony of Mrs. Wilson and others to determine if that testimony is privileged.

3.  Petitioner's Due Process Rights were Violated when State of Ohio failed to prove beyond a reasonable doubt every element of the crime fo murder.

4. Petitioner's Due Process Rights were violated where key evidence is not properly preserved by the State of Ohio and is unavailable to the defense for testing and analysis.

5.  Petitioner's Due Process Rights were violated when trial counsel rendered ineffective assistance of counsel and violation of his rights to a fair trial and reliable trial.

6.  Petitioner's Due Process Rights were violated when prosecutorial misconduct occurred during closing argument, misattributing, inadmissible, inculpatory hearsay statements to a defendant.

7.  Petitioner's Due Process Rights were violated when trial counsel provided  ineffective assistance of counsel by failing to adequately object to, and request a curative instruction regarding, inadmissible, inculpatory hearsay and prosecutorial misconduct.

8.  Petitioner's Due Process Rights were violated when appellate counsel provides ineffective assistance by failing to properly raise constitutional error to the court of appeals.

9.   Petitioner's Due Process Rights were violated when State of Ohio withheld evidence.

10.  Petitioner's Due Process Rights were violated when material exculpatory evidence was not preserved.

(Doc. 1.)  The respondent has filed a Return of Writ.  (Doc. 12.)  The court appointed

counsel, and petitioner has filed a Traverse (doc. 22) through counsel.

2

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following factual and procedural

background:

> In 1993, Brenda Navarre served as a confidential
> informant for the Toledo Police Department's Vice
> Narcotics Unit.  Navarre was cooperating with Detective
> William Seymour.  Seymour was investigating appellant
> for suspected drug trafficking.  Over the course of several
> months, Navarre made three "direct buys" of crack
> cocaine from appellant.  * * *  Subsequent to the multiple
> undercover crack purchases between Navarre and
> appellant, appellant was indicted for his drug trafficking
> activity.
>
> In late November 1993, Seymour received an urgent
> phone call from Navarre.  She was described as "very
> frantic" and was "crying and hysterical." On December 1,
> 1993, Navarre's body was discovered on a city sidewalk.
> She was unresponsive and bleeding from a severe head
> injury.  A bloody, 110–pound boulder was found nearby.
> Navarre was rushed to a hospital for emergency
> treatment.  Navarre died from her injuries several days
> later.
>
> Examination by the medical examiner revealed that
> Navarre's death was caused by numerous injuries to her
> body, including multiple, severe fractures about the face
> and skull.  The medical examiner found that these
> injuries were consistent with multiple blunt force
> traumas and being struck in the head with a boulder.
> After going unsolved for a period of time, the case was
> eventually categorized as a "cold case."
>
> In June 2005, Sergeant Lou Vasquez of the Toledo Police
> Department was investigating a robbery.  The victim was
> the grandson of Janet Wilson who, coincidentally, had
> been married to appellant since 1992.  After the robbery
> investigation's conclusion, Wilson contacted and spoke to
> Sergeant Vasquez on numerous occasions pertaining to
> her knowledge of Brenda Navarre's death.  She continued

3

> to have numerous conversations regarding Navarre over the next year. Wilson finally agreed to make a formal statement detailing what she knew about the death in August 2006.
>
> After Wilson's statement, Detective Bart Beavers of the Toledo Police Department's Cold Case Unit reopened the Navarre case. He spoke to Wilson on at least seven or eight instances regarding Navarre's death. After further investigation, Detective Beavers discovered that the case was originally recorded as a felonious assault and had not been updated to a homicide after Navarre died from her injuries. Due to this miscategorization, the physical evidence relating to the case, including the bloody boulder, was destroyed after the statute of limitations on felonious assaults had run.

[Quoting *State v. Wilson*, 6th Dist. Lucas No. L-08-1380, 2010-Ohio-2247, at ¶¶ 12–16.]

> Notwithstanding the missing evidence, appellant was subsequently indicted on one count of murder in violation of R.C. 2903.02(A). Following a jury trial, appellant was found guilty, and sentenced to a term of imprisonment of 15 years to life. On October 23, 2008, appellant filed a timely notice of appeal. Transcripts of the trial proceedings were filed with this court on December 2, 2008. Thereafter, on June 12, 2009, appellant supplemented the record by filing additional transcripts of two pretrial hearings.
>
> On direct appeal, appellant argued, inter alia, that his due process rights were violated via the state's failure to retain certain physical evidence following the expiration of the felonious assault statute of limitations. [*See* doc. 12, RX 22, Brief of Appellant] After reviewing the record in its entirety, we were unable to find any reversible error in the trial proceedings. With regard to appellant's argument that his due process rights were violated by the state's destruction of physical evidence, we concluded that the discarded evidence was not materially exculpatory. Accordingly, we affirmed the trial court's judgment.[1]

---

[1] *See* doc. 12, RX 25; *State v. Wilson*, No. L-08-1380, 2010 WL 2025521 (Ohio Ct. App. May 21, 2010).

4

On November 18, 2009, while appellant's appeal was pending before this court, appellant filed a "motion to vacate or set aside judgment of conviction or sentence" with the trial court. [*See* doc. 12, RX 37.] In his motion, which was essentially a petition for postconviction relief, appellant argued that the state failed to comply with its discovery obligations under Crim.R. 16(D), and that he was deprived of a fair trial as a result of the state's destruction of physical evidence. The trial court ultimately denied appellant's request for postconviction relief on April 29, 2011, eleven months after we released our decision in Wilson, supra. The court reasoned that the motion was untimely since it was filed more than 180 days after the trial transcripts were filed in this court. Appellant has timely appealed the trial court's denial of his postconviction motion.

(Doc. 12, RX 62, at 2-5; *State v. Wilson*, No. L-13-1210, 2014 WL 1343694, at *1-*2 (Ohio Ct. App. Mar. 28, 2014).)

The court of appeals found that the trial court had correctly determined that the petition for post-conviction relief was untimely filed, thus overruling Wilson's first assignment of error. (Doc. 12, RX 62, at 6; *Wilson*, 2014 WL 1343694, at *3.) In light of that ruling, the court found his second and third assignments of error to be moot. *Id.*

Wilson appealed the ruling to the state high court, setting forth a single proposition of law:

A postconviction petition shall be filed no later than 180 days after the date on which the complete transcript of the trial proceedings is filed in the court of appeals. A complete transcript contains all of the portions deemed necessary by the appellant and filed while the direct appeal remains pending. If portions of the complete transcript are filed on separate dates, the 180-day deadline runs from the latest date.

(Doc. 12, RX 66.) The Supreme Court of Ohio declined to accept jurisdiction. (Doc. 12, RX 68; *State v. Wilson*, 140 Ohio St.3d 1415, 15 N.E.3d 884 (2014).)

5

While his direct appeal was pending, Wilson also filed an application to re-open his appeal pursuant to App. Rule 26(B), arguing that appellate counsel was ineffective for failing to pursue the following assignment of error:

> When the prosecutor repeated hearsay testimony of Mr. Wilson's confession twelve times in closing argument, which had been the subject of a sustained objection during the trial proceedings, the prosecutor committed misconduct. Trial counsel acted ineffectively in failing to object to that misconduct, which violated Mr. Wilson's state and federal constitutional rights to due process and a fair trial.

(Doc. 12, RX 30.) The court of appeals denied the application, finding no merit in the assignment of error. (Doc. 12, RX 31.) Wilson appealed to the Supreme Court of Ohio, but the court dismissed the appeal as not involving any substantial constitutional question. (Doc. 12, RX 36; *State v. Wilson*, 127 Ohio St.3d 1486, 939 N.E.2d 184 (2010).)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as

6

> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002).  *See also Lorraine v. Coyle*, 291

F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  *See also Price v.*

*Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.


### III.  PROCEDURAL DEFAULT

A habeas claim may be procedurally defaulted in two distinct ways.  First, by

failing to comply with state procedural rules.  *Williams v. Anderson*, 460 F.3d 789,

806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).   The respondent argues that several of Wilson's claims were not properly exhausted in state court.  ([Doc. 12](#), at 39-40, 43-46.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)).   To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.   The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).   Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Adams v. Bradshaw*, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing *Buell*, 274 F.3d at 349).

### A.  Ground Six:  Prosecutorial Misconduct

The sixth ground of the petition is:  "Petitioner's Due Process Rights were violated when prosecutorial misconduct occurred during closing argument,

8

misattributing, inadmissible, inculpatory hearsay statements to a defendant." The claim is that the state misattributed inculpatory statements, testified to by Alfonzo Davis, to the defendant, rather than to his wife. (Doc. 1, at [23]-[25].) The respondent contends that this claim was not fairly presented to the state courts. (Doc. 12, at 39; *see also* doc. 22, at 20 (conceding same).)

The record reflects that Wilson failed to properly exhaust this claim by raising it on direct appeal. *See* doc. 12, RX 22. Because the claim was not raised in the state court of appeals, it is barred by the Ohio rule of res judicata. *Lott v. Coyle*, 261 F.3d 594, 611-612 (6th Cir. 2001), *cert. denied*, 534 U.S. 1147 (2002); *Rust*, 17 F.3d at 160-161; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Res judicata would bar Wilson from litigating an issue that could have been raised on direct appeal. *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

Wilson raised the issue in the context of his Rule 26(B) application to reopen, as a meritorious claim that appellate counsel failed to raise on direct appeal. *See* doc. 12, RX 30, at 3. However, the Sixth Circuit has ruled that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008), *cert. denied*, 558 U.S. 996 (2009) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). *See also Muntaser v. Bradshaw*, No. 10–3112, 2011 WL 2646551, at *6 (6th Cir. July 6,

2011), *cert. denied*, 132 S.Ct. 1020 (2012) (Rule 26(B) motion limited to ineffective assistance of appellate counsel claims; cannot preserve underlying substantive claim).

Wilson cannot return to state court to exhaust the claim because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998).  State law no longer would permit Wilson to raise the claim, hence it is defaulted.  *See Williams*, 460 F.3d at 806; *Adams*, 484 F.Supp.2d at 769.

Absent a showing of cause and prejudice to excuse the procedural default, the court will not review the merits of the claim.  *Lott*, 261 F.3d at 612.  Wilson does not address cause and prejudice in his traverse.  *See generally* doc. 22, at 20.

### B.  Ground Seven:  Ineffective Assistance of Trial Counsel

The seventh ground of the petition is:  "Petitioner's Due Process Rights were violated when trial counsel provided  ineffective assistance of counsel by failing to adequately object to, and request a curative instruction regarding, inadmissible, inculpatory hearsay and prosecutorial misconduct."  The claim is that trial counsel's objections to Davis' testimony "were not sufficiently timely or specific."  (Doc. 1, at

[28].)  Again, the respondent contends that this claim was not fairly presented to the state courts.  (Doc. 12, at 39; *see also* doc. 22, at 20 (conceding same).)

The record reflects that Wilson failed to properly exhaust this claim by raising it on direct appeal.  *See* doc. 12, RX 22.  Because the claim was not raised in the state court of appeals, it is barred by the Ohio rule of res judicata.  *Lott,* 261 F.3d at 611-612; *Rust*, 17 F.3d at 160-161; *Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233; *Perry*, 10 Ohio St.2d at 176, 226 N.E.2d at 105-106.  Res judicata would bar Wilson from litigating an issue that could have been raised on direct appeal.  *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

Wilson raised the issue in the context of his Rule 26(B) application to reopen, as a meritorious claim that appellate counsel failed to raise on direct appeal.  *See* doc. 12, RX 30, at 3, 9.  "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review."  *Davie*, 547 F.3d at 312 (citing *White*, 431 F.3d at 526).  *See also Muntaser*, 2011 WL 2646551, at *6.

Wilson cannot return to state court to exhaust the claim because arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand.  *Hutton*, 100 Ohio St.3d at 182, 797 N.E.2d at 956; *Gillard*, 78 Ohio St.3d at 549, 679 N.E.2d 276.  Because state law would no longer would permit Wilson to raise the claim, it is defaulted.  *See Williams*, 460 F.3d at 806; *Adams*, 484 F.Supp.2d at 769.

11

Absent a showing of cause and prejudice to excuse the procedural default, the court will not review the merits of the claim.  *Lott*, 261 F.3d at 612.  Wilson does not address cause and prejudice in his traverse.  *See generally* doc. 22, at 20.

## B.  Ground Nine:  Brady Violation

The ninth ground of the petition is:  "Petitioner's Due Process Rights were violated when State of Ohio withheld evidence."  The claim is that the State of Ohio "failed to disclose a written report pertaining to a phone conversation of Detective Seymour's and the victim in the instant case."  (Doc. 1, at [33].)

The respondent argues that, although Wilson raised the Brady claim in his post-conviction petition, he failed to present the claim to the Supreme Court of Ohio, thus the claim was not fairly presented in one complete round of review in the state courts.  (Doc. 12, at 45-46.)  In addition, the respondent contends that there was no written report to disclose, just the fact that the phone call had been made.  (Doc. 12, at 43.)

The first claim of Wilson's post-conviction petition argued that defendant was not properly apprised of the existence of the phone call, and Officer Seymour's testimony amounted to trial by ambush.  (Doc. 12, RX 37, at [2]-[3]; *see also* doc. 12, RX 43, at [4], [8]-[9].)  The trial court denied the petition, without making findings of fact and conclusions of law.  (Doc. 12, RX 46.)

In appealing the denial of his post-conviction petition, Wilson presented a single assignment of error:  "The trial court abused its discretion by overruling Mr.

Wilson's petition for post-conviction relief – When Mr. Wilson's petition raised meritorious issues that were in denial of his rights under the state and federal constitution[s]." (Doc. 12, RX 49.)  However, the state court of appeals sua sponte dismissed the appeal, because the lower court judgment was not a final appealable order (in that it did not include findings of fact and conclusions of law, as required by state statute).  (Doc. 12, RX 51.)

Wilson appealed the judgment of the court of appeals to the Supreme Court of Ohio, presenting the following proposition of law: "When a trial court's denying a defendant's post-conviction relief pursuant to R.C. 2953.21 and includes adequate findings of fact and conclusions of law – it is a final appealable order." (Doc. 12, RX 54.)  The state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 12, RX 55.)

Wilson next filed a Motion for Issuance of a Final Appealable Order in the trial court.  (Doc. 12, RX 56.)  The trial court subsequently issued Findings of Fact, Conclusions of Law, and Judgment Entry, which denied Wilson's post-conviction petition as untimely filed.  (Doc. 12, RX 57, at 4.)

Wilson appealed that judgment, and raised three assignments of error:

1.  The trial court erred to the prejudice finding that Mr. Wilson's petition for post-conviction relief was filed outside the 180-day time limit and further erred finding that [the] petition failed to raise any meritorious issues or presents evidence of a denial of infringement of rights under the Ohio and United States Constitution[s].

2.  Due Process of Law violations occurred when material exculpatory evidence was not preserved.

13

3.  Due Process of Law violations occurred when material exculpatory evidence was not preserved.

(Doc. 12, RX 60.)  The third assignment of error alleged a Brady violation where "the prosecutor failed to disclose a written report pertaining to a phone conversation of Detective Seymour's and the victim in this case."  (Doc. 12, RX 60, at 12.)

The court of appeals found that the trial court had correctly determined that the petition for post-conviction relief was untimely filed, thus overruling Wilson's first assignment of error.  (Doc. 12, RX 62, at 6; *State v. Wilson*, No. L-13-1210, 2014 WL 1343694, at *3.)  In light of that ruling, the court found his second and third assignments of error to be moot.  *Id.*

Wilson appealed the ruling to the state high court, setting forth a single proposition of law:

> A postconviction petition shall be filed no later than 180 days after the date on which the complete transcript of the trial proceedings is filed in the court of appeals.  A complete transcript contains all of the portions deemed necessary by the appellant and filed while the direct appeal remains pending.  If portions of the complete transcript are filed on separate dates, the 180-day deadline runs from the latest date.

(Doc. 12, RX 66.)  The Supreme Court of Ohio declined to accept jurisdiction.  (Doc. 12, RX 68.)

Wilson has failed to properly exhaust his Brady claim by giving the state high court a full and fair opportunity to rule on his constitutional claim.  *Rust*, 17 F.3d at 160 (citing *Manning*, 912 F.2d at 881).  Wilson cannot return to state court to exhaust the claim because the Ohio Supreme Court has ruled that arguments

that could have been raised in an initial appeal (and were not) will be barred from

consideration on appeal following remand, under the doctrine of res judicata.

*Hutton*, 100 Ohio St.3d at 182, 797 N.E.2d at 956; *Gillard*, 78 Ohio St.3d at 549,

679 N.E.2d 276.

"If, at the time of the federal habeas petition, state law no longer allows the

petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460

F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  Where state court

remedies are no  longer available to the petitioner, procedural default and not

exhaustion bars habeas review.  *Id.*  Where the petitioner fails to demonstrate cause

and prejudice to excuse the default, the claim is barred.  *Id.* at 807.  Wilson has

made no showing of cause and prejudice.  *See generally* doc. 22, at 29.

<u>D.  Claims Defaulted</u>

For the reasons discussed above, the sixth, seventh, and ninth grounds of the

petition have been procedurally defaulted, and cannot serve as the basis for habeas

relief.

## IV.  HEARSAY TESTIMONY

The first ground of the petition is "Petitioner's Due Process Rights were

Violated when State of Ohio bolstered the credibility of its witnesses."  Wilson

complains that the state's witnesses, Detectives Beavers and Vasquez, bolstered the

testimony of his wife, Janet Wilson, by stating that the story that she related to

15

them remained consistent over time, and was consistent with her trial testimony[2].

(Doc. 1, at [6].)  Wilson presented this claim to the state court of appeals, which ruled as follows:

> In June 2005, Sergeant Lou Vasquez of the Toledo Police Department was investigating a robbery.  The victim was the grandson of Janet Wilson who, coincidentally, had been married to appellant since 1992.  After the robbery investigation's conclusion, Wilson contacted and spoke to Sergeant Vasquez on numerous occasions pertaining to her knowledge of Brenda Navarre's death.  She continued to make numerous conversations regarding Navarre over the next year.  Wilson finally agreed to make a formal statement detailing what she knew about the death in August 2006.
>
> After Wilson's statement, Detective Bart Beavers of the Toledo Police Department's Cold Case Unit reopened the Navarre case.  He spoke to Wilson on at least seven or eight instances regarding Navarre's death.
>
> * * * * * *
>
> At trial, Sergeant Vasquez was asked about his conversations with Wilson.  He indicated that they had spoken on several occasions regarding Navarre's death.  When asked about the consistency of Wilson's statements over the years, Sergeant Vasquez responded that her "story was always the same."
>
> Detective Beavers also testified at trial.  He indicated that he had spoken with Wilson at least seven or eight times regarding the Navarre case.  Detective Beavers verified that every statement made to him by Wilson was consistent during the investigation, and that those statements were consistent with her trial testimony.

---

[2]  In his Traverse, Wilson attempts to expand his claim to encompass "bolstering" of Alfonzo Davis's testimony as well.  (Doc. 22, at 9, 11.)  However, the first ground of his habeas petition relates only to alleged bolstering of Janet Wilson's testimony, doc. 1, at [6]-[7], and the claim was so limited before the state court of appeals as well, *see* doc. 12, RX 22, at iii.  Wilson cannot present new grounds in his Traverse.  *See, e.g.*, *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), *cert. denied*, 547 U.S. 1074 (2006) (citing cases).

\* \* \* \* \*

The crux of appellant's first contention is that testimony offered by the state, through Sergeant Vasquez and Detective Beavers, constituted inadmissible hearsay.  Essentially, appellant claims that this testimony bolstered the veracity of that of Janet Wilson.  We disagree.  Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted."

It is well settled that testimony as to the consistency of a witness's prior statements, not offered to prove the veracity of those statements, is not inadmissible hearsay under Ohio law.  In Meriwether, the appellate court held that "[t]estimony that a witness's previous statement during an investigation was consistent with his trial testimony does not narrate the witness's previous statement and does not, therefore, violate the hearsay rule."  State v. Meriwether (Mar. 15, 1996), 2d Dist. No. 15079.

The state's witnesses never narrated Wilson's previous statements.  Instead, they commented on whether those statements were consistent with what she had related to them during the investigation.  We find no indication that the trial court's decision to admit the testimony was unreasonable, arbitrary, or unconscionable.  Appellant's first assignment of error is found not well-taken.

(Doc. 12, RX 25, at 4-5, 6-7; *State v. Wilson*, No. L-08-1380, 2010 WL 2025521, at

\*2-\*4 (Ohio Ct. App. May 21, 2010).)

The respondent argues that the state court's finding that the contested

statements were not hearsay under Ohio law is an evidentiary ruling which must

be respected by a federal habeas court.  (Doc. 12, at 27.)

The "clearly established rule" is that alleged errors of state law, "especially

rulings regarding the admission or exclusion of evidence," are not generally within

the purview of a federal habeas court.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th

17

Cir. 1988). *See also Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003). This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings. *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). *See also Bugh*, 329 F.3d at 512. Courts have defined the category of errors that are fundamentally unfair very narrowly. *Bugh*, 329 F.3d at 512. As Wilson acknowledges, "state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (Doc. 22, at 9-10, quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).) Wilson has not made the case that his claim fits within this narrow category.

Wilson argues that the state court ruling is contrary to the ruling in *Tome v. United States*, 513 U.S. 150 (1995). However, the Supreme Court's ruling in *Tome* was not based on constitutional due process grounds, but rather an interpretation of

the Federal Rules of Evidence[3], specifically Rule 801(d)(1)(B).  *Tome*, 513 U.S. at

152.  *See generally Wamala v. Blaisdell*, No. 10-CV-87-SM, 2011 WL 285692, at *7

n.5 (D.N.H. Jan. 28, 2011) (*Tome* did not address constitutional implications of trial

court's decision); *Brown v. Rapelje*, No. 1:08CV151, 2009 WL 6608173, at *25 (W.D.

Mich. May 26, 2009) (*Tome* addressed issue under Federal Rules of Evidence, not

under U.S. Constitution); *Seward v. Wyoming*, 76 P.3d 805, 811 (Wyo. 2003)

(decision in *Tome* was not based on constitutional issue).  Wilson cites other federal

cases which he argues support his argument that the state court decision here

"constitutes an unreasonable application of clearly  established federal law," doc.

22, at 13, but those cases involve decisions of federal appellate courts.

The question for this habeas court is whether the state court' determination

resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the U.S. Supreme Court.

*Williams*, 529 U.S. at 412-413.  The Supreme Court has repeatedly stated that the

AEDPA prohibits federal habeas courts from relying on precedent from the federal

courts of appeals to conclude that a particular constitutional principle is "clearly

established."  *See, e.g.*, *Lopez v. Smith*, 135 S.Ct. 1, 2 (2014) (per curiam).  The

petitioner must demonstrate Supreme Court case law which clearly establishes the

---

[3]  The Federal Rules of Evidence were adopted by Congress as a statutory
codification of evidentiary rules for the federal court system.  *See, e.g.*, *Daubert v.
Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) (Court interprets legislatively-
enacted Federal Rules of Evidence as it would any statute) .

legal proposition needed to grant habeas relief.  *Lopez*, 135  S.Ct. at 4.  Wilson has

not done so.

Wilson has failed to establish that the state court decision was contrary to, or

involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court.  The petition should not be granted on the basis

of the first ground.


## V.  GRAND JURY TESTIMONY

The second ground of the petition is:  "Petitioner's Due Process Rights were

violated when his request to examine the grand jury testimony of Mrs. Wilson and

others to determine if that testimony is privileged."

Wilson presented this claim to the state court of appeals, which ruled as

follows:

> In his second assignment of error, appellant claims that the trial court
> erred by not disclosing sealed grand jury testimony.  Crim.R. 6(E)
> permits a court to disclose matters occurring before a grand jury upon
> a showing that grounds may exist for a motion to dismiss the
> indictment.  The Ohio Supreme Court has interpreted the rule to mean
> that release of the grand jury testimony is within the discretion of the
> trial court.  The court has further held that an accused is not entitled
> to inspect grand jury proceedings absent a showing of a "particularized
> need" that outweighs the need for secrecy.  See State v. Greer (1981),
> 66 Ohio St.2d 139.
>
> It is well-settled that an accused is not entitled to grand jury
> transcripts absent a showing that justice requires the extreme
> measure of disclosure.  State v. Coley (2001), 93 Ohio St.3d 253.  In
> this same vein, a particularized need sufficient to warrant disclosure is
> shown when "circumstances reveal a probability that the failure to

20

provide the grand jury testimony will deny the defendant a fair trial."
State v. Davis (1988), 38 Ohio St.3d 361, 365, quoting State v. Sellards
(1985), 17 Ohio St.3d 169, 173.

Appellant asserts that a particularized need was present because
spousal testimony could have served as the basis of dismissal as the
indictment arguably was based upon privileged testimony.  Based
upon the record, we disagree.  In order to defeat a grand jury
indictment based on the grand jury's exposure to inappropriate
information such as privileged communication, the appellant must
show that the grand jury lacked other non-privileged testimony that
could have formed the basis for the indictment.  United States v. Bracy
(C.A.9, 1977), 566 F.2d 649; United States v. Basurto (C.A.9, 1974),
497 F.2d 781.

The appellant has not demonstrated that the grand jury lacked
another basis for the decision to indict.  The trial court specifically
noted that it had reviewed the grand jury testimony twice and found
that the appellant had failed to demonstrate a particularized need to
unseal the testimony.  Likewise, we have reviewed the grand jury
testimony provided in the record and conclude that the grand jury was
presented other ample non-privileged testimony that could have
formed the basis of the indictment.  The record shows no basis for a
Crim.R. 6(E) dismissal but for the trial court's denial of disclosure.
The disputed trial court action did not prejudice appellant.

We find appellant has not shown a particularized need that would
outweigh the compelling need for secrecy.  As such, appellant has not
shown that the trial court's decision not to allow access was
unreasonable, arbitrary, or unconscionable.  Appellant's second
assignment of error is found not well-taken.

(Doc. 12, RX 25, at 7-9; *Wilson*, 2010 WL 2025521, at *4.)

The respondent claims that the second ground must be denied as a non-

cognizable state law issue.  (Doc. 12, at 29.)  The state court's finding that Wilson

had not shown a particularized need that would outweigh the compelling need for

grand jury secrecy is a determination of state law.  *See, e.g.*, *Coley v. Bagley*, 706

F.3d 741, 752-753 (6th Cir.), *cert. denied*, 134 S.Ct. 513 (2013). Wilson's burden in habeas is to prove that state court rejection of his claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.

Wilson argues that the state court's ruling amounted to denying him "favorable evidence," in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *United States v. Bagley*, 473 U.S. 667, 676 (1978). However, neither *Brady* nor *Bagley* involved grand jury testimony, but rather the prosecutor's duty to provide evidence material to the defense.

The Supreme Court has declined many opportunities to oversee the grand jury process. First of all, and perhaps most relevant, the Court decided that the Due Process Clause does not compel the states to proceed by way of grand jury indictment when they initiate a prosecution. *Hurtado v. California*, 110 U.S. 516 (1884). The Court has been reluctant to exercise judicial supervision over the grand jury's evidence-taking process. *United States v. Williams*, 504 U.S. 36, 49-50 (1992). In *Williams*, the Supreme Court declined to find that the prosecution had a duty to disclose exculpatory evidence to a federal grand jury. *Williams*, 504 U.S. at 55.

In another case, Justice Rehnquist noted:

The grand jury does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand his trial. Because of this limited function, we have held that an indictment is not invalidated by the grand jury's consideration of hearsay, Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), or by the introduction of evidence obtained in violation of the Fourth Amendment, United States v. Calandra, 414

22

U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).  While the presentation
of inadmissible evidence at trial may pose a substantial threat to the
integrity of that factfinding process, its introduction before the grand
jury poses no such threat.

*Bracy v. United States*, 435 U.S. 1301, 1302 (1978) (Rehnquist, J., denying request

for stay of enforcement of judgment in *United States v. Bracy*, 566 F.2d 649 (9th Cir.

1977), *cert. denied,* 439 U.S. 818 (1978)).  *See also Williams*, 504 U.S. at 51 (grand

jury sits not to determine guilt or innocence, but to assess whether there is

adequate basis for bringing criminal charge).

The Supreme Court has consistently recognized that the proper functioning

of the grand jury system in federal courts depends upon the secrecy of grand jury

proceedings.  *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-219

(1979); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1509 (2012).  In the federal

courts, a party requesting grand jury information must show the need "with

particularity" in order for the secrecy of the proceedings to be lifted in a limited

manner.[4]  *In re Antitrust Grand Jury*, 805 F.2d 155, 160 (6th Cir. 1986).  State

courts in Ohio also require a particularized need.  (Doc. 12, RX 25, at 7-9; *Wilson*,

2010 WL 2025521, at *4, citing *State v. Greer,* 66 Ohio St.2d 139 (1981).)

---

[4] "This is satisfied by a showing that: (1) the material sought is needed to
avoid a possible injustice in another judicial proceeding; (2) the need is greater than
the need for continued secrecy; and (3) the request is structured to obtain only the
material needed."  *In re Antitrust Grand Jury*, 805 F.2d at 161 (citing *Douglas Oil*,
441 U.S. at 222).

23

In the federal system, disclosure of grand jury proceedings "is warranted 'only in those cases where the need for it outweighs the public interest in secrecy,' a burden unlikely to be met by a defendant who was not prejudiced by the claimed violation." *United States v. Goldsby*, No. 03-4329, 2005 WL 647780, at *3 (6th Cir. Mar. 21, 2005) (quoting *Douglas Oil*, 441 U.S. at 223).

Wilson argues that the failure to disclose Janet Wilson's grand jury testimony violated his right to a fair trial, because had he been provided the transcripts, there is a reasonable likelihood that the outcome of the trial would have been different.  (Doc. 22, at 16-17.)  He contends that Janet Wilson admitted that she recanted her testimony.  *Id.* at 16; *see generally* doc. 12, RX 12, Transcript of pretrial hrg., at 106 (lied), *but see id.*, at 121-124 (told the truth).  Wilson claims that Janet Wilson's credibility would have been impacted, had those transcripts been available to him.  *Id.*  This, of course, is speculative.

Janet Wilson did testify at trial, albeit limited by spousal privilege, but there was exploration through her testimony of her apparent shifting story concerning what she told the grand jury.  *See* doc. 12, RX 15, Trial tr., at 184-187, 190-191, 206-209.  At one point, Mrs. Wilson testified about a letter, implying that she had implicated her husband in the crime motivated by jealousy of another woman, but that it wasn't true.  Doc. 12, RX 15, tr., at 184-187, 190-191, 206-209.  She testified that she wrote a letter to her husband, telling him that she had lied to the grand

jury, because she had received a letter intended for another woman, but that her (Mrs. Wilson's) letter was a lie.  (Tr., at 208-209, 224.)

Janet Wilson also testified about an affidavit that was prepared for her by defense counsel, which she declined to sign, because parts of the affidavit were false.  (Doc. 12, RX 15, tr., at 224.)  She testified in particular that one section of the affidavit, "[w]hen it says I was lying to the police about the murder," was false.  (Doc. 12, RX 15, tr., at 222-223.)  Whatever the truth may be, Mrs. Wilson's credibility was an issue that was put before the jury at trial.

In any event, returning to the determinative issue, the state court's finding that Wilson had not shown a particularized need that would outweigh the compelling need for grand jury secrecy is a determination of state law.  *See, e.g.*, *Coley*, 706 F.3d at 752-753; *see generally Hurtado*, 110 U.S. 516 (Constitution does not require grand jury indictments).  Wilson's burden in habeas is to prove that state court rejection of his claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.  Wilson has failed to establish that the U.S. Supreme Court has ruled that there is a constitutional dimension to the question of disclosing grand jury testimony, that is, that the state court decision on this issue was contrary to or an unreasonable application of clearly established Supreme Court precedent.  The petition should not be granted on the basis of the second ground.

## VI.  SUFFICIENCY OF THE EVIDENCE

The third ground of the petition is:  "Petitioner's Due Process Rights were Violated when State of Ohio failed to prove beyond a reasonable doubt every element of the crime fo murder."  On direct appeal, Wilson claimed that the trial court erred in denying his Rule 29 motion for acquittal.  Wilson did not identify the specific element(s) of the crime which he contended that the state had failed to prove.  (Doc. 12, RX 22, at 16-18.)  Instead, he argued that Mrs. Wilson's testimony was suspect because of the spousal privilege, and the money she received in return for her cooperation.  (RX 22, at 17.)  Also, he pointed out that the physical evidence was unavailable to him, which "had the potential to yield DNA evidence that may have been exculpatory."  *Id.*

The state court of appeals reviewed his assignment of error as an argument to the sufficiency of the evidence, and stated that the underlying query was "whether a rational trier of fact could have found the disputed element of a crime established beyond a reasonable doubt."  (Doc. 12, RX 25, at 10; *Wilson*, 2010 WL 2025521, at *5, citing *State v. [Perry] Wilson*, No. 84593, 2005 WL 315374 (Ohio Ct. App. Feb. 10, 2005).)  The state court, then, relied on state law, rather than federal law in addressing the sufficient of the evidence claim.  The 2005 *Wilson* decision, however, was based on *Jackson v. Virginia*, 443 U.S. 307 (1979), and other federal cases.

26

The question for this court, then, is whether the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.  Under the "unreasonable application" clause, this court may grant the writ if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of Wilson's case.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *see also Cavazos v. Smith*, 132 S.Ct. 2, 6 (2011) (per curiam); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.) (en banc), *cert. denied*, 496 U.S. 929 (1990).  As noted above, this was the standard applied by the state appellate court.  (Doc. 12, RX 25, at 10; *Wilson*, 2010 WL 2025521, at *5.)  Thus, the state court identified the correct governing legal principle from *Jackson v. Virginia*.

Under *Jackson*, the habeas court does not make its own subjective determination of guilt or innocence.  *Russell v. Anderson*, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing *Herrera v. Collins,* 506 U.S. 390, 402 (1993)); *Talley v. Hageman*, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing *Herrera*).  This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  *White v. Steele*, 602 F.3d

27

707, 710 (6th Cir. 2009), *cert. denied*, 562 U.S. 858 (2010) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)); *Dover v. Warden, Belmont Corr. Inst.*, No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

The Supreme Court recently emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 132 S.Ct. at 4.  The Court stressed that *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos*, 132 S.Ct. at 6 (quoting *Jackson*, 443 U.S. at 326).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012) (per curiam) (quoting *Cavazos*).

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), *cert. denied*, 132 S.Ct. 1927 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).  The Supreme Court recently affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 132 S.Ct. at 2062.

28

A sufficiency of the evidence claim must be addressed "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), *cert. denied*, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16).  Here, however, Wilson failed to identify which element(s) of the crime were disputed, basing his argument on an attack on the credibility of witnesses, and the fact that certain physical evidence was unavailable.  (The argument in his habeas petition mirrors that of his appellate brief.  *See* doc. 1, at [13]-[14]; doc. 22, at 17.)

Reviewing the state court's determination on this matter, this court cannot find that the state court decision is an objectively unreasonable application of federal law.  Wilson has failed to demonstrate that the state court determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

The petition should not be granted on the basis of the third ground.

## VII.  DESTRUCTION OF EVIDENCE

The fourth ground of the petition is "Petitioner's Due Process Rights were violated where key evidence is not properly preserved by the State of Ohio and is unavailable to the defense for testing and analysis."  Wilson asserts that, in February 2006, the state destroyed evidence, specifically, "a large rock, tennis

29

shoes, parole identity card, welfare card, ring, and a brassier[e]," relevant to the assault and subsequent death of the victim.  (Doc. 1, at [16].)

The tenth ground of the petition is almost identical: "Petitioner's Due Process Rights were violated when material exculpatory evidence was not preserved."  (Doc. 1, at [36]-[37].)  The fourth and tenth grounds of the petition were not presented to the state courts as separate claims, and will be treated as a single due process claim here.

The claim was presented to the state court of appeals as the fifth assignment of error:  "A criminal defendant's due process rights are violated where key evidence is not properly preserved by the State, and is unavailable to the defense for testing and analysis..."  (Doc. 12, RX 22.)  Wilson conceded that he could not show that the evidence (the rock, in particular) was materially exculpatory.  "However, because the evidence may have supported an alternative suspect or cause of the homicide, it is, therefore, potentially useful."  (Doc. 12, RX 22, at 20.)

The state court of appeals addressed his claim as follows:

Appellant's fifth assignment of error suggests that his due process rights were violated by the state's failure to retain physical evidence associated with the case.

\* \* \* \* \*

This court has held that a "state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment to the United States Constitution."  State v. Babos, 6th Dist. Nos. L-05-1394, L-05-1424, L-06-1209, 2007-Ohio-2393, ¶ 20, citing Arizona v. Youngblood (1988), 488 U.S. 51, 57-58.  A violation of due process from a loss of evidence occurs if

30

> either materially exculpatory evidence is destroyed or withheld, or the state acts in bad faith in its failure to preserve potentially useful evidence.  Id. at ¶ 20-21.  Evidence is materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding had been different."  State v. Johnston (1988), 39 Ohio St.3d 48, 61.
>
> After review of the record, we find no indication that the physical evidence was materially exculpatory.  It is reasonably probable that no evidence, aside from victim's blood, would be found on the boulder.  We further find no evidence that the state acted in bad faith when it destroyed the physical evidence.  Detective Beavers testified that the evidence was destroyed due to its labeling in accordance with the initial classification of the offense as a felonious assault, rather than a homicide.

(Doc. 12, RX 25, at 11; *Wilson*, 2010 WL 2025521, at *6.)  The respondent asserts that the state court's adjudication was objectively reasonable.  (Doc. 12, at 36.)

The state court of appeals identified the governing legal standard as that found in *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  This court must determine whether the state court's ruling involved an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Youngblood*. This court may grant a writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the petitioner's case.  *Williams*, 529 U.S. at 412-413.  The state court decision is not "unreasonable" simply because this court may consider the decision to be erroneous or incorrect. Rather, the court must determine whether the state court decision was an objectively unreasonable application of *Youngblood*.  *Williams*, 529 U.S. at 410-412.

The Supreme Court outlined the relevant standard in *Youngblood*:

31

The Due Process Clause of the Fourteenth Amendment, as interpreted
in Brady, makes the good or bad faith of the State irrelevant when the
State fails to disclose to the defendant material exculpatory evidence.
But we think the Due Process Clause requires a different result when
we deal with the failure of the State to preserve evidentiary material
of which no more can be said than that it could have been subjected to
tests, the results of which might have exonerated the defendant.  Part
of the reason for the difference in treatment is found in the observation
made by the Court in Trombetta . . . that "[w]henever potentially
exculpatory evidence is permanently lost, courts face the treacherous
task of divining the import of materials whose contents are unknown
and, very often, disputed."  Part of it stems from our unwillingness to
read the "fundamental fairness" requirement of the Due Process
Clause . . . as imposing on the police an undifferentiated and absolute
duty to retain and to preserve all material that might be of conceivable
evidentiary significance in a particular prosecution.  We think that
requiring a defendant to show bad faith on the part of the police both
limits the extent of the police's obligation to preserve evidence to
reasonable bounds and confines it to that class of cases where the
interests of justice most clearly require it, i.e., those cases in which the
police themselves by their conduct indicate that the evidence could
form a basis for exonerating the defendant.  We therefore hold that
unless a criminal defendant can show bad faith on the part of the
police, failure to preserve potentially useful evidence does not
constitute a denial of due process of law.

*Youngblood*, 488 U.S. at 57-58 (internal citations omitted).

As mentioned earlier, Wilson conceded on appeal that he could not show that

the evidence was materially exculpatory[5], but believed that it might be potentially

useful.  (Doc. 12, RX 22, at 20.)  The Supreme Court in *Youngblood* categorized

evidence which "could have been subjected to tests, the results of which might have

_____

[5] The state court of appeals, as well, stated "we find no indication that the
physical evidence was materially exculpatory."  (Doc. 12, RX 25, at 11; *Wilson*, 2010
WL 2025521, at *6.)  Wilson now contests that finding, speculating (without
evidentiary support) that "it is reasonably probable that evidence linking the
perpetrator would have been found."  (Doc. 22, at 19.)

32

exonerated the defendant" as "potentially useful" evidence.  *Youngblood*, 488 U.S. at 58; *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (destruction of evidence prevented expert from conducting tests which might have exonerated defendant).  In such a case, Wilson was required to show bad faith in order to make out a due process claim.  *Youngblood*, 488 U.S. at 58.

The victim was assaulted in December 1993 and died shortly thereafter.  The evidence had originally been labeled as pertaining to a felonious assault, rather than a homicide, and the label was never updated.  The evidence was held for over a decade, but was subsequently destroyed in February of 2006.  (Doc. 12, RX 16, tr., at 47.)

Det. Beavers, of the Toledo Police Cold Case Unit, began looking into the Navarre homicide in the summer of 2006 (July or August, he testified).  (Doc. 12, RX 16, tr., at 44.)  Det. Beavers discovered that the physical evidence in question had been destroyed earlier in the year.  Because the victim had not died immediately as a result of the assault, the evidence had been mislabeled as pertaining to a felonious assault.  *Id.* at 46-48.  The statute of limitations for that offense had run.  The state court's determination that the evidence in question, which had been mislabeled, was not destroyed in bad faith (doc. 12, RX 25, at 11; *Wilson*, 2010 WL 2025521, at *6) is not an unreasonable determination.

Wilson has failed to demonstrate that state court's ruling involved an unreasonable application of clearly established federal law. The petition should not be granted on the basis of the fourth or tenth grounds.

## VIII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The fifth ground of the petition is: "Petitioner's Due Process Rights were violated when trial counsel rendered ineffective assistance of counsel and violation of his rights to a fair trial and reliable trial." Wilson relies on the same facts in support of his fourth ground for his ineffective assistance claim. He contends that trial counsel was ineffective in not seeking a motion to dismiss the case as a result of the destruction of evidence. (Doc. 1, at [20].)

Wilson presented this claim on direct appeal as his sixth assignment of error, and the state court of appeals addressed it in conjunction with his fifth assignment of error (above, concerning the destruction of evidence). As to his ineffective assistance of counsel claim, the state court found no indication that the physical evidence was materially exculpatory, and no evidence that the state acted in bad faith when it destroyed the evidence. In light of those findings, the court of appeals found his sixth assignment of error to be moot. (Doc. 12, RX 25, at 11-12; *Wilson*, 2010 WL 2025521, at *6.)

The state court addressed Wilson's ineffective assistance claim without referring to federal constitutional precedent. In such a case, the question before

34

this court on habeas review is whether the state court adjudication resulted in a decision that was contrary to clearly established federal law, as determined by the U.S. Supreme Court. *Williams*, 529 U.S. at 412-413. A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405.

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 132 S.Ct. 1399, 1404 (2012); *Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in *Monzo v. Edwards*:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted). *See generally Strickland v. Washington*, 466 U.S. 668, 689 (1984) (two-part test).

The Supreme Court has recently affirmed in several cases that this court must approach the state court's rulings in a highly deferential manner. The

35

Supreme Court stated in *Harrington v. Richter* that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The Court in *Richter* instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied*, 132 S.Ct. 2376 (2012) (quoting *Richter*). The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so. *Id.* at 786; *see also Montgomery*, 654 F.3d at 676.

Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in *Richter*, the court finds that Wilson has failed to demonstrate that the state court's ruling was contrary to *Strickland*. Even assuming for the sake of argument that counsel's failure to move to dismiss was unreasonable, the court cannot agree that, as Wilson argues (doc. 1, at [20]), it was likely that the motion would have been granted, in light of the state courts' ruling

36

on the missing evidence.  Thus, there was no prejudice to Wilson.  Wilson has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the fifth ground.


## IX.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The eighth ground of the petition is:  "Petitioner's Due Process Rights were violated when appellate counsel provides ineffective assistance by failing to properly raise constitutional error to the court of appeals."

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  *Frye*, 132 S.Ct. at 1404; *Joshua*, 341 F.3d at 437.  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial.  *Evitts v. Lucey*, 469 U.S. 387 (1985).

Wilson filed a Rule 26(B) application to re-open his appeal, arguing that appellate counsel was ineffective for failing to pursue the following assignment of error:

> When the prosecutor repeated hearsay testimony of Mr. Wilson's confession twelve times in closing argument, which had been the subject of a sustained objection during the trial proceedings, the prosecutor committed misconduct.  Trial counsel acted ineffectively in failing to object to that misconduct, which violated Mr. Wilson's state and federal constitutional rights to due process and a fair trial.

(Doc. 12, RX 30.)

37

The court of appeals denied the application, finding no merit in the assignment of error.[6]  The court of appeals applied the *Strickland* standard.  (Doc. 12, RX 31, at 3-4.)  As to the prejudice prong, the court ruled:

> Given that the direct testimony of the stepson was not wholly negated or recanted on cross-examination as implied by appellant, the failure to object during closing arguments does not constitute evidence that but for the desired objections the trial outcome would have been different.

(Doc. 12, RX 31, at 4.)

Reviewing the state court's ruling in accordance with the guidance set forth in *Richter*, the court finds that Wilson has failed to demonstrate that the state court's ruling was contrary to *Strickland*.  Wilson has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the eighth ground.

## SUMMARY

The petition for a writ of habeas corpus should be denied.  For the reasons discussed earlier, the sixth, seventh, and ninth grounds of the petition were procedurally defaulted.  As to the remaining grounds, Wilson has failed to establish

---

[6]  In his Traverse, Wilson argues that the state court of appeals did not address his claim on the merits.  (Doc. 22, at 21-22.)  While Wilson clearly disagrees with its ruling, the state court did in fact address the merits.  (Doc. 12, RX 31, at 2-4; *see also* quoted portion herein.)

that the state court decision was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court.

RECOMMENDATION

The petition for a writ of habeas corpus should be denied.


Dated:  <u>June 1, 2016</u>               <u>/s/ Kenneth S. McHargh</u>
                                Kenneth S. McHargh
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with

the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file

objections within the specified time WAIVES the right to appeal the District Court's

order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d

947 (6th Cir. 1981).