UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

| | | |
|---|---|---|
| ROBERT WILSON, | : | CASE NO. 3:12-cv-14 |
| Petitioner, | : | |
| vs. | : | OPINION & ORDER |
| EDWARD T. SHELDON, Warden, | : | [Resolving Doc. 1] |
| Respondent. | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On January 1, 2012, Petitioner Robert Wilson filed a petition for a writ of habeas relief under 28 U.S.C. § 2254.[1] With his petition, Wilson seeks relief from the judgment and sentence that the Lucas County Court of Common Pleas imposed following Wilson's 2008 conviction for a December 1993 murder.[2]

On June 1, 2016, Magistrate Judge Kenneth S. McHargh filed a Report and Recommendation that recommended the Court dismiss the Petitioner's writ in its entirety.[3] On July 15, 2016, Petitioner Wilson filed objections, but only on grounds for relief one, two, and four.

For the reasons below, the Court **OVERRULES** Petitioner Wilson's objections, **ADOPTS** the Report and Recommendation, and **DISMISSES** Petitioner's § 2254 petition.

---

[1] Doc. 23.
[2] *Id.*
[3] *Id.*

Case No. 12-cv-14
Gwin, J.

## I.    Background

As the Magistrate Judge's Report more fully discusses, Petitioner Wilson was convicted of murder in violation of Ohio Rev. Code § 2903.02(A) before the Lucas County Court of Common Pleas.[4]

On December 1, 1993, Petitioner Wilson fatally injured a Toledo Police Department Vice Narcotics Unit confidential informant, Brenda Navarre.[5] The perpetrator used a 110-pound boulder. Autopsy results showed that blunt force head trauma caused the victim's death.

Brenda Navarre passed away the next day, December 2, 1993. However, the Toledo Police Department mistakenly classified the offense as a felonious assault.  As a result, the police destroyed the boulder and other evidence when the statute of limitations on felonious assaults expired.

The case was categorized as a "cold case" until 2005. In June 2005, Petitioner Wilson's wife, Janet Wilson, met with Toledo Police about her husband's possible involvement in Ms. Navarre's murder.  The investigation was reopened.

After indictment and trial, the jury found Petitioner Wilson guilty of murder. The trial court then sentenced the Petitioner to fifteen years to life.

On October 23, 2008, Petitioner appealed to the Ohio Court of Appeals, arguing that the state's failure to retain the incriminating physical evidence violated Wilson's due process rights.[6] The state appellate court affirmed the conviction. It also concluded that the discarded boulder was not "materially exculpatory."[7]

---

[4] Doc. 1.
[5] Doc. 23.
[6] Doc. 12, RX 22.
[7] Doc. 12 RX 62, at 2-5; *State v. Wilson*, No. L-13-1210, 2014 WL 1343694, at *1-*2 (Ohio. Ct. App. Mar. 28, 2014).

Case No. 12-cv-14
Gwin, J.

On November 18, 2009, while Petitioner's appeal was pending, Wilson filed a trial court "motion to vacate or set aside judgment of conviction or sentence.".[8] He argued that the state did not comply with its discovery obligations under Ohio Crim. R. 16(D), and that he was deprived of a fair trial due from the destruction of physical evidence. On April 29, 2011, the trial court denied Petitioner's post-conviction relief as untimely.

Petitioner Wilson then appealed the appellate court's decision to the Ohio Supreme Court, which declined to accept jurisdiction.

While Petitioner's direct appeal was pending, Wilson filed an application to re-open his appeal under Ohio Appellate Rule 26(B)(1), arguing ineffective assistance of counsel. The Court of Appeals denied the application. Petitioner appealed to the Supreme Court of Ohio, which dismissed the appeal.

With his January 4, 2012 habeas petition, Wilson raised the following ten grounds for relief:

1. Petitioner's Due Process Rights were Violated [sic] when State of Ohio bolstered the credibility of its witnesses.
2. Petitioner's Due Process Rights were violated when his request to examine the grand jury testimony of Mrs. Wilson and others to determine if that testimony is privilege was denied.
3. Petitioner's Due Process rights were violated when State of Ohio failed to prove beyond a reasonable doubt every element of the crime of murder.
4. Petitioner's Due Process Rights were violated where key evidence is not properly preserved by the State of Ohio and is unavailable to the defense for testing and analysis.
5. Petitioner's Due Process Rights were violated when trial counsel rendered ineffective assistance of counsel and violation of his rights to a fair trial and reliable trial.
6. Petitioner's Due Process Rights were violated when prosecutorial misconduct occurred during closing argument, misattributing inadmissible, inculpatory hearsay statements to a defendant.
7. Petitioner's Due Process Rights were violated when trial counsel provided ineffective assistance by failing to adequately object to, and request a curative instruction regarding, inadmissible, inculpatory hearsay and prosecutorial misconduct.

---

[8] Doc. 23.

-3-

Case No. 12-cv-14
Gwin, J.

8. Petitioner's Due Process Rights were violated when appellate counsel provide ineffective assistance by failing to properly raise constitutional error to the court of appeals.
9. Petitioner's Due Process Rights were violated when the State of Ohio withheld evidence.
10. Petitioner's Due Process Rights were violated when material exculpatory evidence was not preserved.[9]

On March 6, 2015, Respondent filed a Return of Writ.

On June 1, 2016, Magistrate Judge McHargh filed a Report and Recommendation ("R&R"; "Report"). The R&R recommended dismissing Wilson's sixth, seventh, and ninth grounds for relief as procedurally defaulted. The Report recommended denying Petitioner's remaining grounds for relief (one, two, three, four, five, and eight) since the state appellate court did not unreasonably apply clearly established federal law in rejecting Plaintiff's claims.

On July 15, 2016, the Petitioner filed objections to the Magistrate Judge's Report and Recommendation on the following grounds for relief:

1. Ground One – Violation of Due Process for Improper Bolstering of the Credibility of Witnesses
2. Ground Two – Petitioner's Due Process rights were violated when he was denied the right to review Mrs. Wilson's grand jury testimony
3. Ground Four – Mr. Wilson's right to due process was violated when State failed to preserve material evidence[10]

The Court considers each of the Petitioner's objections below.

## II. Legal Standard

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made.[11] Parties must file any objections to a Report and Recommendation within fourteen days of service. Failure to object within that time waives a party's right to appeal the Magistrate Judge's

---

[9] Doc. 1.
[10] Doc. 25 at 3, 7, 11.
[11] 28 U.S.C. § 636(b)(1).

-4-

Case No. 12-cv-14
Gwin, J.

recommendation.[12] Absent objection, a district court may adopt the Magistrate Judge's report without review.[13] Accordingly, this Court will review Petitioner's three objections to the R&R and will adopt the remainder of the R&R.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court cannot grant habeas relief unless the state court's adjudication was either "contrary to" or involved an "unreasonable application of" clearly established federal law.[14] Alternately, a petitioner may also argue that the "decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[15] The petitioner carries the burden of proof.[16]

### III. Discussion

#### a. Ground One

Petitioner's first claim is, "Violation of Due Process for Improper Bolstering of the Credibility of Witnesses,"[17] that "rendered [his] trial fundamentally unfair thereby violating his right to due process."[18] In particular, Petitioner Wilson objects to the admission of Sergeant Lou Vasquez's[19] and Detective Bart Beavers'[20] testimonies.

---

[12] *See* Thomas v. Arn, 474 U.S. 140, 145 (1985); United States v. Walters, 638 F.2d 947, 949–50 (6th Cir. 1981).
[13] Thomas, 474 U.S. at 149.
[14] 28 U.S.C. § 2254(d).
[15] 28 U.S.C. § 2254(d).
[16] Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citing Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam)).
[17] Doc. 25 at 5. Petitioner Wilson also argued that the law enforcement officers bolstered the testimony of Janet Wilson's son, Alfonzo Davis. However, Magistrate Judge McHargh correctly explained that because Petitioner Wilson did not present this claim in his initial habeas petition or to the state court of appeals, he cannot now present new grounds in his Traverse. Doc. 23 at 16.
[18] Doc. 25 at 3.
[19] "At trial, Sergeant Vasquez was asked about his conversations with [Janet] Wilson. He indicated that they had spoken on several occasions regarding Navarre's death. When asked about the consistency of Wilson's statements over the years, Sergeant Vasquez responded that her 'story was always the same.'" Doc 12-1 at 2.
[20] "Detective Beavers also testified at trial. He indicated that he had spoken with [Janet] Wilson at least seven or eight times regarding the Navarre case. Detective Beavers verified that every statement made to

Case No. 12-cv-14
Gwin, J.

This claim has two parts.

First, Petitioner Wilson says that Sergeant Vasquez's and Detective Beaver's testimonies constituted hearsay.

Second, Petitioner Wilson says that the officers' testimonies improperly "bolstered" the testimony of his wife, Janet Wilson.

Magistrate Judge McHargh rejected these arguments in his Report and Recommendation.

This Court agrees with the R&R.

As Magistrate Judge McHargh explained, the "'clearly established rule' is that alleged errors of state law, 'especially rulings regarding the admission or exclusion of evidence,' are not generally within the purview of a federal habeas court.'"[21]

Alleged state court evidentiary rulings errors do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."[22] Courts have defined the category of errors that are fundamentally unfair very narrowly.[23] "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[24]

In Petitioner Wilson's case, the admission of Sergeant Vasquez's and Detective Beavers' testimonies was not contrary to clearly established federal law.

---

him by [Janet] Wilson was consistent during the investigation, and that those statements were consistent with her trial testimony. Doc 12-1 at 2.

[21] Doc. 23 at 17; see *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).
[22] *Broom v. Mitchell*, 441 F. 3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).
[23] *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).
[24] *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43, (1996)).

Case No. 12-cv-14
Gwin, J.

### i. Hearsay

Petitioner Wilson appears to make a hearsay argument. Specifically, he alleges that Sergeant Vasquez's and Detective Beavers' testimonies regarding Janet Wilson's prior statements amounted to hearsay.

Sergeant Vasquez and Detective Beavers met with Janet Wilson a number of times throughout Ms. Navarre's murder investigation. At trial, Janet Wilson's credibility as a witness was called into doubt. Sergeant Vasquez and Detective Beavers thus testified that Janet Wilson's trial testimony was "consistent" and "always the same" as the information she told them throughout the investigation.

The officers' testimonies are admissible.

Testimony regarding someone's prior statement is admissible when offered "for the limited purpose of rehabilitating a witness's credibility."[25] The officers' testimonies did not amount to hearsay. Rather, their testimonies were offered to rehabilitate Janet Wilson's credibility.[26]

Notably, trial courts "ha[ve] greater discretion to admit prior consistent statements to rehabilitate an impeached witness, by clarifying or explaining [her] statements alleged to be unreliable, than if the statements are offered for their truth."[27]

The admission of the officers' testimonies did not result in a due process violation.

---

[25] *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 729-30 (6th Cir. 1994) (testimony on a witness's prior consistent statements are admissible to rehabilitate the witness "by clarifying or explaining his prior statements").
[26] *Id.* at 730
[27] *Id.* (quoting *United States v. Harris*, 761 F.2d 394, 399–400 (7th Cir.1985) (citations omitted)).

Case No. 12-cv-14
Gwin, J.

### ii. Improper Bolstering

Petitioner Wilson also alleges that the prosecution used Sergeant Vasquez's and Detective Beavers' testimony to bolster Janet Wilson's testimony "after [she] had been thoroughly impeached."[28]

"Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury."[29]

> Significantly, the Court provided that the prosecutor 'may ask a government agent or other witnesses whether he was able to corroborate what he learned in the course of a criminal investigation. However, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining *how* the information was corroborated and where it originated.' Thus, if a prosecutor asks a government agent whether the agent was able to corroborate information provided by an informant, the prosecutor must introduce to the jury how that information was corroborated, e.g., via documents or searches.[30]

Petitioner Wilson's bolstering claim loses.

Petitioner Wilson alleges that Sergeant Vasquez's statement that Janet's "story was always the same" was improper bolstering. The record does not establish improper bolstering. Sergeant Vasquez's testimony reads, in part,

> Q [Mr. Loisel]: [D]id you have any more conversations with [Janet Wilson] regarding the homicide of Brenda Navarre?
>
> A [Sgt. Vasquez]: About a dozen conversations.
>
> Q: [W]here did these conversations take place?
>
> A: Well, some of them were over the phone, some of them were at her bar . . . and then some of them were in person where I would meet her on the street.
>
> Q: And again, without getting into the specifics of these conversations, what did they revolve around?

---

[28] Doc. 25 at 5.
[29] *United States v. Trujillo*, 376 F. 3d 593, 608 (6th Cir. 2004) (*Id.* at 254 (quoting *United States v. Francis*, 170 F.3d 546, 551 (6th Cir.1999)).
[30] *United States v. Martinez*, 253 F. 3d 251, 254 (6th Cir. 2001) (*Francis*, 170 F.3d at 551).

-8-

Case No. 12-cv-14
Gwin, J.

> A: Around the homicide of Brenda Navarre.
>
> …
>
> Q: And just one final question, Detective. With respect to these conversations, were they consistent with the first contact you had until the last contact you had with Janet Wilson?
>
> A: Yes, the story was always the same.
>
> Q: Thank you, Detective. Nothing further.[31]

No improper bolstering occurred.

Bolstering would have been present if the "prosecutor repeatedly asked [the] law enforcement agent whether he had corroborated information obtained from a witness . . . [but] the agent provided little further detail to demonstrate how the corroboration occurred or what it consisted of."[32]

However, the sergeant never alleged that he corroborated Janet Wilson's story. Rather, his testimony was limited to explaining when and where he met with Mrs. Wilson.

Similarly, the prosecutor did not improperly bolster Detective Beavers' testimony.

At trial, the following exchange occurred:

> Q [prosecution] And finally, . . . with respect to your conversations with Janet Wilson, that aside from her [word], she has nothing else to corroborate what she told you . . .?
>
> …
>
> A: No. That's not correct. The statement that her son Alfonzo Davis made to me corroborated what she told me.[33]

There was no suggestion that the government knew something that the jury did not. Rather, Detective Beavers specifically explained how he corroborated Janet Wilson's information. The jury was free to assess the credibility of th`e officers' statements.

No due process violation occurred.

---

[31] Doc. 12-16 at 108-11.
[32] 170 F.3d 546, 551 (6th Cir.1999).
[33] Doc. 12-16 at 100.

-9-

Case No. 12-cv-14
Gwin, J.

Petitioner Wilson is not entitled to relief on the basis of his hearsay or bolstering claims.

**b. Ground Two**

Defendant Wilson's second claim is that his "Due Process rights were violated when he was denied the right to review Janet Wilson's grand jury testimony."[34] Petitioner Wilson argues that he is entitled to review this testimony "because spousal testimony could have served as the basis of dismissal as the indictment arguably was based upon [spousal] privileged testimony."[35]

A defendant is not ordinarily entitled to grand jury testimony.[36] The Supreme Court has said that, in federal cases, a court can grant a defendant access after "a strong showing of particularized need for grand jury materials."[37] The Ohio Supreme Court has followed the federal court system and adopted a "particularized need" test for grand jury materials.[38] Ohio law does not mandate disclosure of grand jury proceedings except when the "ends of justice" require it.[39] A defendant shows a particularized need when the disclosure is necessary to "'impeach a witness, to refresh his recollection, to test his credibility and the like.'"[40]

The determination as to whether there has been a showing of a "particularized need" is within the discretion of the trial court.[41] The trial court's decision will not be reversed unless an

---

[34] Doc. 25 at 7.
[35] Doc. 23 at 21.
[36] *See* Butterworth v. Smith, 494 U.S. 624, 630 (1990) ("[G]rand jury secrecy remains important to safeguard a number of different interests.").
[37] *United States v. Sells EnQ'Q, Inc.*, 463 U.S. 418, 443 (1983).
[38] *State v. Greer*, 420 N.E.2d 982, 989 (Ohio 1981) (upon a showing of a particularized need for grand jury materials, the trial court may properly grant access).
[39] *Id.*; *State v. Cherry* (1995), 107 Ohio App.3d 476 ("If the use of grand jury testimony were permitted simply because a defendant claims that the prior statements of a witness could be used for impeachment purposes, virtually all grand jury testimony would be subject to disclosure.").
[40] *Id.* at 986 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, (1958)).
[41] *Id.* at 144, 420 N.E.2d 982.

-10-

Case No. 12-cv-14
Gwin, J.

abuse of discretion is found. An abuse of discretion suggests an unreasonable, arbitrary, or unconscionable decision.[42]

The trial court denied Wilson's motion to review grand jury testimony after a hearing. The Sixth District Court of Appeals affirmed, finding that Wilson had not demonstrated a particularized need. The state court found:

> In order to defeat a grand jury indictment based on the grand jury's exposure to inappropriate information such as privileged communication, the appellant must show that the grand jury lacked other non-privileged testimony that could have been the basis for the indictment. *United States v. Bracy* (C.A. 9, 1966), 566 F.2d 649; *United States v. Basurto* (C.A.9, 1974), 497 F.2d 781. The appellant has not demonstrated that the grand jury lacked another basis for the decision to indict. The trial court specifically noted that it had reviewed the grand jury testimony twice and found that the appellant had failed to demonstrate a particularized need to unseal the testimony. Likewise, . . . . [w]e find appellant has not shown a particularized need that would outweigh the compelling need for secrecy.[43]

Grand jury proceedings are secret.[44]

However, under *Brady v. Maryland*, a defendant has a right to review exculpatory evidence that is "material to either guilt or punishment."[45]  Evidence used to impeach a witness falls under the *Brady* rule.[46]

Thus, the need for grand jury proceedings to remain private must be balanced against a defendant's right to review exculpatory evidence.[47]

---

[42] *State v. Adams*, 62 Ohio St.2d 151, 157–158 (1980).
[43] Doc. 12-25 ¶¶ 28-30.
[44] The reasons for preserving the secrecy of grand jury proceedings are: (1) to prevent the escape of individuals who may be indicted; (2) to insure that the grand jury has the utmost freedom in its deliberations and to prevent persons subject to indictment or others from importuning the grand jurors; (3) to prevent tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; and (5) to protect innocent individuals who are exonerated by the grand jury from disclosure of the fact that they were under investigation and from the expense of standing trial where there was no probability of guilt. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 237 n.10 (1979).
[45] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[46] *United States v. Bagley*, 473 U.S. 667, 676, (1985) ("In *Brady* . . . the prosecutor failed to disclose exculpatory evidence . . . . This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.").

-11-

Case No. 12-cv-14
Gwin, J.

Petitioner Wilson argues that Janet Wilson's grand jury testimony is impeachment evidence falling under the evidence *Brady* requires to be disclosed. Petitioner says that the grand jury testimony was material evidence that should have been included. This Court disagrees. The exclusion of the grand jury testimony did not "undermine confidence in the outcome of the trial."[48]

As Magistrate Judge McHargh explained,

[Wilson] contends that Janet Wilson admitted that she recanted her testimony. [Doc 22] at 16; see generally doc. 12, RX 12, Transcript of pretrial hrg., at 106 (lied), *but see id.*, at 121-124 (told the truth). Wilson claims that Janet Wilson's credibility would have been impacted, had those transcripts been available to him. *Id.* This, of course, is speculative.[49]

This Court agrees with Magistrate Judge McHargh that Janet Wilson's credibility was an issue that was put before the jury at trial.[50] Petitioner Wilson says that the inability to cross-examine Janet Wilson with her grand jury testimony had a critical impact upon the trial, but as Magistrate Judge McHargh pointed out, "there was exploration through her testimony of her apparent shifting story concerning what she told the grand story."[51] Thus, this Court finds the grand jury transcripts immaterial because Petitioner Wilson received a fair trial in their absence.

As Magistrate Judge McHargh explained, the determination that a petitioner has not shown particularized need outweighing the need for secrecy of grand jury proceedings is a determination of state law.

Petitioner Wilson is not entitled to habeas relief on his second claim.

---

[47] A defendant must show that: (1) "the material sought is necessary to avoid a possible injustice in another judicial proceeding;" (2) "the need for disclosure outweighs the need for continued secrecy;" and (3) "the request is structured narrowly to cover only the material needed."[47] *Douglas Oil Co.*, 441 U.S. 211 at 222.
[48] *United States v. Bagley*, 473 U.S. 667, 676, (1985).
[49] Doc. 23 at 24.
[50] *Id.* at 24-25.
[51] *Id.*

Case No. 12-cv-14
Gwin, J.

### c. Claim Four

Defendant Wilson's final ground for relief is, "Mr. Wilson's right to due process was violated when State failed to preserve material evidence."[52]

On December 1, 1993, Brenda Navarre sustained a severe head injury. A bloody, 110-pound boulder was found near her unresponsive body.[53] Detective Chad Culpert entered the boulder murder weapon into evidence.[54] Ms. Navarre succumbed to her injuries on December 2, and her death was ruled a homicide. However, the Toledo Police Department erroneously classified the case as a felonious assault. In February 2006, as a result of an administrative purging, Detective Culpert ordered the boulder destroyed.[55] There is no evidence that Detective Culpert is responsible for the mislabeling.[56] The murder remained a cold case until Janet Wilson contacted police in August 2006.

For a due process claim of improper destruction of evidence, a defendant bears the burden of proving that the evidence was either "materially exculpatory" or that the state acted in bad faith in failing to preserve "potentially useful" evidence.

---

[52] Doc. 25 at 11.
[53] Doc. 23 at 3.
[54] Doc. 12 at 48. Detective Culpert had been present for Ms. Navarre's autopsy and took pictures of the deceased for police records. Doc. 12-16 at 37. In addition to the boulder, the police also entered into evidence Ms. Navarre's tennis shoes, parole identity card, ring, and brassiere. Doc. 1 at 16.
[55] Detective Bart Beavers, who led the investigation into Ms. Navarre's death after Janet Wilson contacted the police in August 2006, recalled, "I asked Detective Culpert why [the boulder] was destroyed . . . the property room sends out mass mailings to detectives and investigators, as well as officers, and in there they're requesting any property that many [sic] not be involved in – maybe the statute has run or maybe the case has already been . . . adjudicated or the evidence is no longer needed, they request that property be destroyed, and so he got this along with a pile of other requests. He saw that the heading initially was felonious assault. Brenda Navarre didn't die right away. So the heading that he received that showed felonious assault that occurred in 1993, he said, well, we're not going to need that anymore . . . . It was inadvertently destroyed by Detective Culpert." Doc. 12 at 37-38.
[56] Doc. 12 at 38.

-13-

Case No. 12-cv-14
Gwin, J.

The state court of appeals rejected Petitioner Wilson's argument, finding "no indication that the physical evidence was materially exculpatory" and "no evidence that the state acted in bad faith when it destroyed the physical evidence."[57]

As Magistrate Judge McHargh explained, "The state court decision is not 'unreasonable' simply because this court may consider the decision to be erroneous or incorrect. Rather, the court must determine whether the state court decision was an objectively unreasonable application of *Youngblood*."[58]

For the following reason, the state court's findings are not unreasonable. Petitioner's due process claim fails.

i. Materially Exculpatory Evidence

Evidence is materially exculpatory if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[59]

In order for evidence to be "material," it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[60]

"The ultimate touchstone of this inquiry is, critically, 'whether in [the] absence [of the evidence] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'"[61] A reasonable probability is therefore shown "when the government's

---

[57] Doc. 23 at 31.
[58] *Id*.
[59] *Bagley*, 473 U.S. at 682.
[60] *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).
[61] *United States v. Fields*, 763 F.3d 443, 461 (6th Cir.), *cert. denied,* 135 S. Ct. 392 (2014), and *cert. denied sub nom. Lewis v. United States,* 135 S. Ct. 978, 190 L. Ed. 2d 861 (2015), and *cert. denied sub nom. Lewis v. United States,* 135 S. Ct. 987, 190 L. Ed. 2d 866 (2015) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, (1995)).

-14-

Case No. 12-cv-14
Gwin, J.

evidentiary suppression undermines confidence in the outcome of the trial."[62] "This is lower than the more-probable-than-not standard, but the difference between the two 'is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.'"[63]

Petitioner Wilson has not shown that the lost evidence is materially exculpatory. In order to have done so, Mr. Wilson needed to prove that the boulder would exculpate him from the homicide.

However, the boulder is of indeterminate exculpatory value. That is, it is conceivable that the rock did not contain any of the perpetrator's DNA or clothing fragments. Thus, even if the boulder did not inculpate Mr. Wilson, it also might not exculpate him from the homicide.

Finally, the Defense failed to present evidence that the boulder's alleged exculpatory nature was apparent at the time of destruction.

The murder weapon is therefore better classified as "potentially useful" evidence.

### ii.   Potentially Useful Evidence

"Potentially useful" evidence is evidence that "could have been subject to tests, the results of which might have exonerated the defendant."[64]

Failure to preserve potentially useful evidence does not violate due process unless the defendant can show (1) bad faith on the part of the police, (2) that the exculpatory value of the evidence was apparent before its destruction, and (3) that the nature of the evidence was such

---

[62] *Kyles v. Whitley,* 514 U.S. at 434 (internal quotation marks omitted).
[63] *LaMar v. Houk,* 798 F.3d 405, 415–16 (6th Cir. 2015), *cert. denied,* 136 S. Ct. 1715, 194 L. Ed. 2d 814 (2016) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011) (internal quotation marks and citation omitted)).

[64] *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988).

-15-

Case No. 12-cv-14
Gwin, J.

that the defendant would be unable to obtain comparable evidence by other reasonably available means.[65]

Defendant Wilson has not met this heavy burden.

"In order to establish bad faith, a defendant must prove official animus or a conscious effort to suppress exculpatory evidence."[66] Negligence, even gross negligence, on the part of the government does not constitute bad faith.[67]

At the very least, the police department exhibited negligence and carelessness in its destruction of the murder weapon. It is baffling that the evidence was not re-categorized when Ms. Navarre died only one day after she was assaulted.

However, this Court is bound by precedent requiring a petitioner to show a conscious effort to destroy exculpatory evidence on the part of the police.[68] Petitioner Wilson has failed to do this.

Although there was, of course, a conscious effort to destroy, there is nothing to suggest a conscious effort to destroy *exculpatory* evidence. The boulder's destruction, without more, does not support an inference of bad faith.[69] The failures of the government do not amount to bad faith as required by the *Youngblood* standard.

---

[65] *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir.1996) (citing *Youngblood*, 488 U.S. at 57–58, 109 S.Ct. 333)).
[66] *Youngblood*, 488 U.S. at 57–58, 109 S.Ct. 333(internal quotation marks omitted).
[67] *United States v. Wright*, 260 F.3d 568, 572 (6th Cir. 2001); *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

[68] Justice Rehnquist explained the importance of showing bad faith in *Youngblood*: "We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58.
[69] *See, e.g.*, *State v. Colby*, 2004-Ohio-343, ¶ 14 ("Thus, as the state provided radio transmissions from the March 8, 2001 stop, bad faith cannot be inferred by the failure to preserve the Brimfield Township tapes.").

-16-

Case No. 12-cv-14
Gwin, J.

Even if Petitioner Wilson had shown bad faith, he has not demonstrated that the boulder's exculpatory value was apparent before its destruction.

The Defendant's final ground for relief fails.

### IV. Conclusion

For the reasons provided below, the Court **OVERRULES** Petitioner Wilson's objections, **ADOPTS** the Report and Recommendation, and **DISMISSES** Petitioner's § 2254 petition. Moreover, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. 2253(c).[70]

IT IS SO ORDERED.

Dated: August 11, 2016           *s/      James S. Gwin*
                                                                   JAMES S. GWIN
                                                                   UNITED STATES DISTRICT JUDGE

---

[70] **Error! Main Document Only.** 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).